LEWIS, Executor, v. KERR AND CRAIG.

1. Principal and agent: REVOCATION BY DEATH. Where an agent was authorized by a power of attorney for the principal "*and in his name*, to grant, bargain, sell and convey all of his real estate in Iowa, for such prices and on such terms as he may think best; " which power was not coupled by its terms, with any interest in the agent, it was held, that it was revoked by the death of the principal, and that a sale and conveyance made by the agent thereunder after such death, but before he received notice thereof, was without authority and void.

2. *Casady* v. *McKenzie*, 4 Watts & Serg., reviewed and distinguished by DILLON, J.

*Appeal from Page District Court.*

THURSDAY, OCTOBER 6.

ON the 25th day of February, 1858, Robert W. Kerr executed, acknowledged and delivered to George S. Lewis

a power of attorney, authorizing the said George S. Lewis
to take possession of his property, real and personal, and
in his name to sell, rent and convey the same, sue and
receipt for debts, &c., &c.   This power of attorney was
duly recorded in Page County, where the parties then
lived.   The said Kerr was indebted to Lewis, and the
power of attorney, though it contains no such recital, was
made to Lewis to enable him to collect his debt by the sale
of Kerr's property.   Shortly after making the power of
attorney, Kerr started for Indiana, where he had formerly
lived.   On the 6th day of March, 1858, and while on his
way back to Indiana, the said Robert W. Kerr made his
last will, at Albia, Monroe County, Iowa, which was duly
executed and witnessed.

In April, 1858, the said Robert W. Kerr died at Moores-
ville, Indiana, but his death was not known to the plain-
tiff, Lewis, or to the defendants, James and William Craig,
or any other person in Iowa, till in the month of August
following.   On the 29th day of May, 1858, the said
George S. Lewis, as agent and attorney, sold to the defend-
ants, James and William Craig, 48 feet of the N. side of
lot 5 (now 6), of block 20, in the town of Clarinda, Page
County, Iowa, which was the property of the said Robert
W. Kerr, for the sum of $1,500, and on the same day
made a deed therefor in the name of "Robert W. Kerr by
George S. Lewis, his attorney," &c.   And the said James
and William Craig executed their two promissory notes,
one for $500, and the other for $1,000, the first due in one
year, and the latter in two years from date; and the latter
was secured by mortgage on the lot, sold and conveyed as
aforesaid.   On the 30th day of May, 1858 (immediately
after the sale), the said Lewis indorsed the notes in blank,
as follows: "R. W. Kerr, by George S. Lewis, atty;" and at
the same time gave Kerr credit, for the amount of the
notes, on his indebtedness to the said Lewis.   In July,

1858, the said Lewis sold and indorsed the $500 note to Manny, Drake & Co., and $1000 note to Field, Beardsley & Co., by signing, each of them, in blank, "Geo. S. Lewis." In August, 1858, Lewis learned of the death of Kerr, and advised the Craigs of it. On the 6th day of December, 1858, the will was duly proven and admitted to probate and recorded. It provides, first, that George S. Lewis shall be executor; second, for the payment of funeral expenses; third, that the first moneys received after the funeral expenses shall be retained by the executor and applied in payment of a debt due him from the testator; fourth, after paying the debt due Lewis, then all other demands to be paid; fifth, all the balance is devised to the testator's father, Robert Kerr, Sen., the defendant.

On the 15th day of June, 1859, the only claim against the estate was filed and allowed for $356.21.

At the May Term, 1860, of the Page District Court, the plaintiff, as executor of the will of Robert W. Kerr, brought this action in equity, making James and William Craig and Robert Kerr, Sen. (the devisee under the will), parties defendant, and in his petition sets forth the above facts, and alleges that "the property could not now be sold for the same amount of money " as at the former sale; and also, that he, as executor, had an interview with the Craigs after knowledge of the death of Robert W. Kerr, "wherein they expressed themselves satisfied with their title, and promised to pay off the said notes and thus ratified the said sale."

The prayer is, that a decree may be made, "confirming and quieting " the title to the said property in the Craigs, and for general relief.

The answer of Craigs denies the material parts of the petition, except the sale to them, and especially denies any ratification of the sale; and alleges that the estate is insolvent, and that a good title cannot therefore be made to

them. On the 4th day of September, 1860, Robert Kerr, Sen., the devisee and father, filed an answer, accompanied with a deed of the property, offering to ratify and confirm the act of the attorney. Proof was taken, and a decree, at plaintiff's costs, was entered, that the property "is in James and William Craig, as against the heirs and legatees of R. W. Kerr, and that said title is clear from all incumbrance except creditors who have had claims allowed against the estate of R. W. Kerr, and *when* the said claims shall be paid off, the said title shall be perfect in the said James and William Craig." The decree made no provision for the payment of these claims by the plaintiff, or for indemnifying the Craigs against them.

From the decree the Messrs. Craig appeal.

*Harvey & Moore* for the appellants.

*C. C. Cole* (with whom was *John R. Morledge*) for the appellee.

DILLON, J.—This decree cannot be sustained. The letter of attorney, under which Lewis acted in making the sale,

**1. PRINCIPAL AND AGENT : revocation. etc.** was in the usual and ordinary form. By it, no interest or estate in the property was conveyed or assigned to the attorney. On the contrary, he is simply authorized "for Robert W. Kerr, and *in his name*, to grant, bargain, sell and convey all of his real estate in Iowa, for such prices, and on such terms, as he may think best." Unlike *Hunt* v. *Rousmanier*, 8 Wheat., 174, it is to be observed that, in the case at bar, the power of attorney was not given in consideration of advances at the time, and contained no provision, reciting that it was given as security for the payment of the debt owing to Lewis, and no allegation is made of any mistake in the drafting of the instrument, nor does the instrument contain any agreement founded upon a consideration that the power should be

irrevocable. The principal could have revoked it at any moment. He could, himself, have sold and conveyed the property to others, and received the proceeds upon which Lewis would have had no lien. It is, then, clearly not a case where, in a legal sense, the attorney had a power coupled with an interest. In point, see *Mansfield* v. *Mansfield*, 6 Conn., 559; 8 Wheat., 174, *supra;* Am. Law Register, Sept., 1863 (vol. 2, N. S.), 654, and cases there cited.

As to the effect of the death of the principal in determining the authority of an agent, the common law rule and the civil law rule are, in some respects, different.

By the civil law, the acts of an agent done in good faith, in ignorance of the death of his principal, are binding upon his representatives. Inst., 3, 27, 10; Digest, 17, 1, 26; 1 Domat, b. 1, tit. 15, § 4; Story Ag., §§ 491, 495, where the doctrines of the two systems are critically discussed. In other words, by the civil law, death does not necessarily, and *ipso facto*, operate as a revocation of the agency, but the agency, like an express revocation, determines only from the time of notice. But, at common law, "the death of the principal," says Kent (2 Com., 641), "is an instantaneous and absolute revocation of the authority of the agent, unless the power be coupled with an interest." Whether this is true in the broad and unqualified way in which it is stated or not, it is certainly true, where there is an *act* to be done by the agent, and where, as in the case at bar, that act can *only be done in the name of the principal.* Story Ag., § 448; *Hunt* v. *Rousmanier*, 8 Wheat., 174, 200; *S. C.*, 1 Am. Lead. Cas., 556, and notes of Editors, 567, and the many authorities cited. See particularly the able judgement of SUTLIFF, J., in the recent case of *Ish* v. *Crane*, 8 Ohio State R., 520, reviewing cases, and the above passage from Kent. "Regularly, indeed," says Story, Agency, § 495), " where the act to be done, must be done,

Lewis v. Kerr and Craig.

in the name of the principal, and not in that of the agent, the authority is extinguished by the death of the principal, because it has then become incapable of being so executed. And, it should seem, that this would be equally true in the Roman law, and in the jurisprudence of Continental Europe, under the like circumstances." The distinction between revocation by act of the party, and by act of law, as in case of the death of the principal, is thus clearly stated by MELLEN, Ch. J., in *Harper* v. *Little*, 2 Greenl. R., 14, 18 : " In the case of a *revocation*, the power continues good *against the constituent*, till notice is given to the attorney ; but the instant the constituent *dies*, the estate belongs to his heirs or devisees, or creditors; and their rights cannot be divested or impaired by any act performed by the attorney, after death has happened ; the attorney *then* being a stranger to them, and having no control over their property."

NOTE. — Plaintiffs' counsel cite the case of *Cassidy* v. *McKenzie*, 4 Watts & Serg., 282, where the precise question was, " whether payment to an agent, when both parties are ignorant of the death of the principal, is a good payment," and it was held that it was. The case has been criticised and denied as being the law. " This case," say the Editors of the American Leading Cases, vol. 1, page 567, " was decided in opposition to all authorities." Chancellor KENT says (2 Com., 646, *n*): " The broad principle is here inculcated, that the determination of an agency by death, takes effect only from the time of notice. This is substituting the rule of the civil for the rule of the common law." Of the same case, Mr. Parsons observes (1 Cont., 61, *n*), that it was decided "in opposition to the current of authority." But see approval of this case in *Carringer* v. *Whittington*, 26 Mo., 313; and see, also, *Knapp* v. *Alword*, 10 Paige, 205. That it is against the current of authority is probably true, and yet there are strong equitable reasons to support the *precise point* decided. Such a case is very different from the one at bar, where an *act* was done in the *name* of a deceased person. But in *Cassidy* v. *McKenzie*, no such *act* was required to be sanctioned, and when we reflect that the mere payment of money to the agent required no *act* to be done by the agent, and that the money, when received by the agent, would be held by him for the representatives or creditors of the principal, the same as if it had remained in the hands of the original debtor, the thought is worthy of grave consideration, whether a sound distinction might not be drawn between such a case and one where, as at bar, the property was transferred in the name of a dead man. ROGERS, J., who delivered the opinion, argues the case strongly in this view. He says: "Here there is no act to be done. This money has been paid by the debtor and received by the agent in good faith, and why should it not be good when the authority

Inasmuch as Lewis had no vested interest in the property, and inasmuch as, by the very terms of the power of attorney, he could only sell and convey *in the name of Kerr*, it follows that his power to do this, was extinguished by the death of his constituent. Upon the decease of the principal, the property vested, *eo instante*, in his devisee, Robert Kerr, Sen., subject, of course, to the claims of creditors. Neither the creditors or devisee could be bound by any act done under the power of attorney, after it was determined by the death of the principal. If it was valid as to the devisee, it would be equally so as to creditors; and the effect would be to give the plaintiff, as one of the creditors, a preference over the others; and this is, in effect, what he seeks by this action. The decree below admits that the creditors of Robert W. Kerr would not be bound by the act of Lewis, and that their claims, so far as probated and allowed, are *liens* upon the property. As the devisee was not bound by the act of Lewis, in the sale to the defendants, it is clear that it was entirely optional with him to keep the property himself. The Messrs. Craig could not have compelled the devisee to convey them the property. To any such claim the devisee could have answered: "Lewis was not *my* agent, he is a stranger to me." Has the devisee then the sole right to say whether he will keep the property, or whether he will make the purchasers keep it? We think not. Though this is a petition nominally "to confirm and quiet" the title in the purchasers

is revoked by death, as it confessedly is, when expressly revoked by the principal in his lifetime? Can it be that a payment made to an agent from a foreign country, or from one of our cities to the western states, employed for the special purpose of collecting debts, is void because his principal may have died the day before the actual receipt of the money?"

In South Carolina, Maryland, Georgia, and perhaps some of the other States, it is enacted by statute that a power of attorney is in force until the agent has notice of the death of the principal. But whatever we may think of the relative merits of the civil and common law rules (and the civil law rule seems to be the only one which will, in many cases, protect innocent persons), we are not free to adopt it against the great current of authority, and without the sanction of the legislature.

from Lewis, it is really in the nature of a bill for a specific performance, that is, to compel the defendants to take the property and thus be under obligation to pay for the same.

Now, it is a principle very generally acted upon by courts of equity, that specific performance will not be decreed where there is no reciprocity or mutuality of obligation. Unilateral obligations are not thus enforced. This case is within none of the exceptions to the rule respecting mutuality. Willard Eq., 267, and cases; *Olive* v. *Dougherty*, 3 G. Greene, 371; *Clark* v. *Langworthy*, 3 Iowa, 563. As the Messrs. Craig could not have compelled the devisee to have conveyed them the property, if it had risen in value to $2,000, so the devisee cannot compel them by an alleged ratification on his part, more than two years after the death of the devisor (for there is no proof of any willingness on the part of the devisee to let them have the property until he filed his answer in September, 1860), to take the property, it having in the meantime fallen in value to one thousand dollars. But the doctrine of ratification has here no place. Lewis did not purport to act for the devisee, but for the son. The devisee attempts to ratify an act which was not done for him, or on his behalf, but for and in the name of another. The alleged ratification of the purchase by the defendants is not established by the testimony. If they said to *Lewis* all that his petition alleges (see statement), this would not be a ratification. "Appearing to be satisfied" would not answer. Besides, this is denied by the defendants in their answer and in the evidence; and as Lewis had no authority to make a title to them, statements to him would be the same as statements to a stranger to the property.

Instead of a petition to quiet the defendants' title (of which they have not the least vestige, by virtue of the conveyance from Lewis) the petition should rather be called one which asks the court to *make a contract* between

the defendants and Robert Kerr, the devisee, and after having made it, *specifically* to execute it.

In any view of the case the decree below was wrong, and might work great injustice to the defendants, by leaving the property liable to debts which had been probated, and by failing to indemnify the defendants against this liability.

Upon the case made, and the proof offered, we are of opinion that the decree should be reversed and the petition dismissed; and it is so accordingly ordered in this court.

Reversed.

COLE, J. being of counsel, took no part in the determination of this case.