VANCE ET AL. V. ANDERSON.

THE SAME V. BOGGS.

1. **Will:** MADE IN ANOTHER STATE: EVIDENCE. Under Section 2328 of the Revision (Sec. 2351 of the Code), a will proved and allowed in another State should be allowed and may be recorded by the Circuit Court of this State. Such allowance is conclusive of the due execution of the will.

2. **Power of Attorney:** DEATH OF PRINCIPAL: CONVEYANCE. A power of attorney to convey lands of a principal, which is not coupled with an interest in the agent, is revoked by the death of the principal, and a sale and conveyance, made after such death and before notice thereof, is without authority and void. (*Lewis v. Kerr and Craig*, 17 Iowa, 73.)

3. ———: CONVEYANCE. An agent authorized by power of attorney to convey the lands of his principal, must do so in the name of the principal.

*Appeal from Monroe District Court.*

FRIDAY, SEPTEMBER 25.

THESE actions were brought by plaintiffs, to recover certain lands in Monroe county, which they claim as the devisees of Samuel Harris, deceased.

*Stuart Bros. and Andrews*, for appellants.

*Perry & Townsend*, for appellees.

MILLER, CH. J.—I. Appellant's counsel first urge as erroneous the ruling of the court admitting the will of Samuel Harris

in evidence, and in argument five separate objections are urged against the admissibility of the will. It is a sufficient answer to all of these objections that the abstracts of record fail to show that any objection was made to this evidence in the court below, or that any exceptions were taken thereto.

If, however, objections had been properly made and exceptions taken, we find no error in the ruling of the court. In the abstract furnished by appellees, the will is fully set out. The record shows that the testator was at the time of making the will a resident of Lawrence county, Pennsylvania, that the will was duly probated before the Register of that county on the 6th day of January, 1870; that a copy thereof was duly certified by the Register, authenticated by the proper presiding judge and clerk of the court of Common Pleas, Orphans' Court, etc., in and for the same county, with the court seal affixed, and that the will was duly filed and allowed in the office of the clerk of Monroe county, Iowa, on the 27th day of November, 1872, and such filing and allowance duly approved by the Circuit Court of Monroe county, on the 2d day of December, 1872. The will and the record of the probate thereof in Pennsylvania was authenticated as required by Section 4058 of the Revision.

Section 2328 of the Revision provides that: "Wills proved and, allowed in any other State or country, shall be allowed and recorded in any county in this State in which it may be desired to use them, upon the production of a copy thereof to the proper county court (now Circuit Court), duly authenticated by the attestation of the clerk of the court in which such will was proved, together with the certificate of the judge or presiding officer that such attestation is in due form of law. If there be no clerk, such attestation may be made by the judge or presiding officer, and in all cases if the clerk or officer making such attestation have a seal of office, such seal shall be annexed to the attestation."

1. WILL: made in another state: evidence.

The allowance and recording of the will by the Circuit Court, was in conformity with the provisions of this section. This allowance, the statute provides, is "conclusive of the due

execution of the will, unless set aside by an original or appellate proceeding in the District Court." Revision, Sec. 2329. It was not necessary that the will should again be proved and probated in this State. It being duly allowed and recorded by the Circuit Court, as required by law, it may be used and carried into effect in this State, and " a transcript of such record, duly authenticated, may be read in evidence in all courts within this State without farther proof." Revision, Section 2332. The certified transcript of the record of the allowance of the will by the Circuit Court substantially complied with all the statutory requirements, and it was therefore properly admitted.

II. The plaintiffs set forth in their petitions in substance that in February, 1853, Samuel Harris became the owner of the land in controversy, and died seized thereof about the first day of January, 1869; that on the 10th day of October, 1868, said Harris made his last will and testament, which was duly admitted to probate in Lawrence county, Pennsylvania; that, by said will, the land in controversy was bequeathed to his brother William Harris and his sister Anna Vance, and that the plaintiffs are the heirs of said William and Anna; that about June 1, 1870, one J. Christian Miller executed a deed in the name of said Samuel Harris, purporting to convey the land absolutely to his son, Frank B. Miller, without any consideration, to cheat and defraud plaintiffs, and fraudulently dated said deed December 18, 1869; that afterwards said Frank B. Miller executed deeds to the defendants for different portions of said lands. It is alleged that said J. Christian Miller had no power or authority to make any deeds in the name of said Samuel Harris; that said deeds were, and are, void for that reason.

The answer denies the principal allegations of the petition; avers that J. Christian Miller was duly authorized, by a letter of attorney in writing from Samuel Harris, authorizing and empowering said J. Christian Miller to sell and convey said land in his name; that the conveyance from J. C. to Frank B. Miller was made in pursuance of said letter of attorney at the time it bears date, and before the death of Samuel Harris, and

that they are purchasers in good faith for value from said Frank B. Miller, and had no notice of any fraud on the part of said Millers.

The evidence shows that about July 7, 1869, Samuel Harris executed a power of attorney in blank for the sale of certain lands belonging to him in Monroe county, Iowa. This instrument did not name any person as attorney, but left a blank space for the insertion of such name. This power of attorney was sent to John A. Vance, one of the plaintiffs, then residing in Lisbon, Wisconsin, in a letter from Samuel Harris, in September, 1869. It was then still in blank. Vance subsequently sent the power of attorney to J. Christian Miller in December, 1869. There is no evidence tending to show that any express authority was ever given to fill the blank in the power of attorney with the name of J. Christian Miller or any other name. There is evidence tending to show that Miller filled the blank by writing his own name therein. At all events the blank was thus filled, and said Miller conveyed the whole of the land to his son, Frank B. Miller, which conveyance bears date December 18, 1869. Samuel Harris died January 1, 1870. There is no evidence as to the actual consideration, if any, paid by Frank B. Miller for the land conveyed to him. No money was paid to Samuel Harris or to his heirs or legal representatives.

It is claimed by plaintiffs that the conveyance to Frank B. Miller by his father was, in fact, made long after the death of Harris; that such conveyance was void, and that the defendants are not *bona fide* purchasers. It will not be necessary for us to decide all of the questions of fact and law that are discussed by counsel. One of the vital questions of fact is as to the time when the conveyance by J. Christian Miller to Frank B. Miller was made. The presumption, in the absence of evidence as to the true time, would be that it was executed as of the date of the instrument, but this presumption may be rebutted by evidence showing when, in fact, the instrument was executed. *Morris v. Sargent*, 18 Iowa, 105. To overcome the presumption and prove that it was made at a time different from that at which it purports to have been execu-

ted, when the rights of third parties are involved, the evidence should be clear and satisfactory. Upon a careful consideration of all the evidence in this case we are of opinion that such a case is here made out; that the conveyance to Frank B. Miller was not executed until long after it purports to be, and after the death of Samuel Harris. Without entering upon a discussion of the testimony from which we deduce this conclusion, it is sufficient to say that, to our minds, it very satisfactorily establishes the fact.

What, then, are the legal consequences flowing from this fact? The answer is, according to the almost unbroken current of authorities, that the death of Samuel Harris operated in law as an instantaneous and absolute revocation and dissolution of the authority of Miller under the power of attorney, conceding that the same had been thereby duly conferred. It was held in *Lewis v. Kerr and Craig*, 17 Iowa, 73, in a case similar to the one before us, that where an agent was authorized by a power of attorney for the principal "*and in his name* to grant, bargain, sell and convey all of his real estate in Iowa, for such prices and on such terms as he may think best," which power was not coupled with an interest in the agent, such power was revoked by the death of the principal, and that a sale and conveyance made thereunder by the agent after such death, but before notice thereof, was without authority and void. This holding is in accord with the well settled doctrine that the death of the principal operates as an immediate determination of an authority not coupled with an interest, and acts done by the agent after the death of the principal, though in ignorance of it and in good faith, are void. See *Hunt v. Rousmanier*, 8 Wheat., 174; *Galt v. Gallaway*, 4 Pet., 333; *Jenkins v. Atkins*, 1 Humph., 294; *Stirnermaun v. Cowing*, 7 John. Ch., 275; *Houghtaling v. Marvin*, 7 Barb., 412; *Gale v. Tappan*, 12 N. H., 146; *Surv. Parts. of Auley McNaughton & Co. v. Moore*, 1 Haywood, 189; *Palmer v. Reiffenstein*, 1 Manning & Granger, 94; *Clark's Exrs. v. Parish's Exrs.*, 1 Bibb., 547; *Campbell's Representatives v. Kincaid*, 3 Mon., 68; *Gleason v. Dodd*, 4 Met.

*2. POWER OF ATTORNEY: death of principal: conveyance.*

(Mass.), 333; *Houston's Admr. v. Cantril*, 11 Leigh, 137; *Harper v. Little*, 2 Greenlf., 14; *Knapp v. Alvord*, 10 Paige, 205; *Cassidy v. McKenzie*, 4 Watts & Serg., 282.

There is this well settled distinction between a *revocation* of a power by act of the principal and a dissolution thereof by operation of law, as by the death of the principal, that in the former the power continues good until notice of revocation is given, but the instant the principal dies his estate vests in his heirs or devisees or creditors, and their rights cannot be divested or impaired by an act performed by the agent after the death of his principal. *Harper v. Little, supra.* Again, in a case where the act to be done by the agent must be done in the name of the principal, it must be done in his lifetime, and cannot be done after his death, for as the principal could himself do the act only in his lifetime, so must the agent be likewise limited. The title to land cannot be transferred in the name of a dead man. His death causes the title to descend to his heirs.

The doctrine is also settled that an agent authorized to sell and convey the lands of his principal, must do so in the name of the principal. Story on Agency, Sec. 148, and cases cited in the notes. This is always true where the title is in the name of the principal.

In this case the power was a naked one, not coupled with any interest in the agent; the title to the land was in the name of the principal, and a conveyance could be made by the agent only in the principal's name. At the time he did make the conveyance his principal was dead, the title to the land vested in the devisees, and the power of the agent was absolutely gone. He could convey no shadow of a title by his deed. See further, Story on Agency, Secs. 50, 51, and cases cited in notes. It was said by DILLON, J., in *Lewis v. Kerr and Craig, supra*, "Upon the death of the principal the property vested, *eo instanti*, in his devisee, subject, of course, to the claims of creditors. Neither the creditors nor devisees could be bound by any act done under the power of attorney, after it was determined by the death of his principal."

What we have said above is conclusive of the case, and we need not inquire as to questions made and discussed by counsel in respect to the filling of the blank in the power of attorney, nor is it material to inquire whether the defendants are *bona fide* purchasers without notice, since Frank B. Miller, their grantor, acquired no title by his deed from J. Christian Miller, and could, therefore, confer no title by his deeds to the defendants.

The judgments will, in each case, be affirmed, separate judgments being entered. No costs will be taxed in favor of appellees for the additional abstracts filed by them, the same being unnecessary and not in conformity with the rules of court.

AFFIRMED.