THOMAS H. DAVIS, *Administrator of the Estate of A. F. Harsh, deceased, et al.*, v. CHARLES S. CLARK.

**No. 9671.**

1. ESCROW — *defined.* An escrow is an obligatory writing delivered by the obligor to a third person, to be held by him until the performance of a specified condition by the obligee or the happening of a certain contingency, upon the performance of which condition or the occurrence of which contingency it becomes of full force and effect.

2. —————— *not revoked by death of party to.* The depositary of an escrow is the agent of both the parties thereto. The contract of deposit is not revocable at the mere will of either of such parties, nor will the death of either of them abrogate the contract of deposit.

3. —————— *of mortgage and note by husband and wife, mortgagee entitled to delivery on performing condition though husband deceased in meantime.* A mortgage executed by hus-

band and wife on the lands of the husband, and an accompanying note executed by the same persons, delivered by them in pursuance of an agreement with the mortgagee and payee, to a third person, to be held by him until the transmission to him by the mortgagee and payee of the amount of the loan in the form of a draft to the order of the wife, and to be then delivered by him to such mortgagee and payee, are escrows; and upon the performance by the mortgagee and payee of the stipulated conditions on his part the depositary is bound to deliver the note and mortgage to him, notwithstanding the intervening death of the husband.

4. —————— *when condition performed, instruments take effect by relation from time of deposit.* In the case stated, the escrows take effect by constructive delivery upon the performance of the stipulated conditions by the mortgagee and payee; and such delivery, by fiction of law, relates back to the delivery made to the depositary in the lifetime of the mortgagor and payor, and is substituted to the same.

Error from Saline District Court. Hon. R. F. Thompson, Judge. Opinion filed April 10, 1897. *Affirmed.*

*T. F. Garver,* for plaintiffs in error.

*J. B. Hutchinson,* for defendant in error.

DOSTER, C. J. This was an action brought by Charles S. Clark, the defendant in error, against Thomas H. Davis, as administrator of the estate of A. F. Harsh, deceased, and others, to recover on a note, and foreclose a mortgage securing it, executed by Harsh and his wife in his lifetime to one William P. Book, and by him assigned and delivered to the defendant in error. Special findings were made by the court, fully setting forth all the material facts of the case, as follows:

"1. During the summer of 1888, A. F. Harsh and Lalla C. Harsh applied to William P. Book for a loan of seven thousand dollars on four hundred acres of land situated in this county, and during said summer negotiations were had between said parties in reference to such loan.

"2. A short time prior to December 5, 1888, it was agreed between the parties mentioned in the preceding paragraph, that said Wm. P. Book should loan A. F. Harsh and Lalla C. Harsh the sum of seven thousand dollars on four hundred acres of land, situate in this county, and that a promissory note on one year's time should be given by said A. F. Harsh and Lalla C. Harsh to Wm. P. Book, and that said note should be secured by mortgage upon the four hundred acres of land; and that after said note and mortgage were executed, they should be delivered to Wm. M. Clark to be held by him until said Book paid to said Clark the seven thousand dollars so borrowed, said money to be paid to Lalla C. Harsh, and that upon such settlement said note and mortgage were to be delivered to said Book.

"3. On December 5, 1888, said A. F. Harsh and Lalla C. Harsh, his wife, made, executed and delivered the promissory note and mortgage, copies of which are attached to the petition of plaintiff herein, and placed said note and mortgage in the hands of Wm. M. Clark in pursuance to the agreement set forth in the last paragraph above.

"4. Soon after said note and mortgage were executed and placed in the hands of said Wm. M. Clark, said Clark notified said Wm. P. Book of their execution and delivery to him.

"5. At the time said note and mortgage were executed, as stated in paragraph three of these findings, defendants, Harsh and wife were at Pueblo, Colo., and said Harsh and wife were about to start upon a trip through the Southern states for the benefit of Mr. Harsh's health, who was then very ill.

"6. On December 24, 1888, Mr. Harsh died in Kansas City, Missouri, having immediately before returned to that place from his Southern trip.

"7. Lalla C. Harsh, now Lalla C. Collins by marriage, is the daughter of Wm. M. Clark and Wm. M. Clark is the brother-in-law of Wm. P. Book.

"8. On December 29, 1888, W. P. Book, who was then in New York City, obtained a certified check for seven thousand dollars, payable to the order of Lalla

C. Harsh, and immediately forwarded said check to Wm. M. Clark, who was then living in this county.

"9. Upon the receipt of said check by Clark it was indorsed by the payee, Lalla C. Harsh, and by Wm. M. Clark deposited in the First National Bank of Salina, Kan., and in part payment therefor certificates of deposit were issued, one for fifteen hundred dollars, and five for one thousand dollars each, payable to Lalla C. Harsh.

"10. After the check mentioned in the last paragraph above was received by Clark, he forwarded to said W. P. Book the note and mortgage hereinbefore mentioned.

"11. On July 24, 1891, Wm. P. Book assigned, transferred and delivered to the plaintiff said note and mortgage, as collateral security for the payment of a debt due from Book to plaintiff.

"12. The amount due the plaintiff from Wm. P. Book is greater than the amount due upon the note for seven thousand dollars, upon which this suit was brought.

"13. On January 17, 1889, from moneys drawn on said certificates, Mrs. Harsh paid to Book on the note of seven thousand dollars the sum of two thousand dollars, and on the eleventh day of February following, she paid him the further sum of five hundred dollars, which was drawn from the bank on one of said certificates, and since then other small payments on the note have been made.

"14. There is now due upon said note of seven thousand dollars the sum of $5,844.78."

From these facts the court concluded as matter of law :

"1. That the plaintiff is entitled to recover of T. H. Davis, administrator of the estate of A. F. Harsh, deceased, upon the note of seven thousand dollars, the sum of $5,844.78.

"2. That the plaintiff is entitled to foreclose the mortgage set forth in his petition to secure the payment of said sum of $5,844.78."

To the above findings should be added the fact, ap-

pearing by the pleadings, that the title to the mortgaged lands was in the deceased, Harsh, and the further fact, appearing by the evidence, that Book, the mortgagee, before remitting the money on the note and mortgage, knew of the death of Harsh. Judgment of foreclosure was rendered and a motion for a new trial was overruled; from which judgment and decision the defendants below prosecute error to this court.

The important and difficult question which arises upon these facts is: What effect did the death of the principal mortgagor, occurring as it did before the mortgagee had paid the money to the intermediary, have upon the uncompleted transaction? On the part of the plaintiffs in error it is contended that Clark was the agent of Harsh alone, and that, according to the usual rule of such cases, the death of Harsh terminated the agency, leaving the agent powerless to make that delivery of the instruments in question without which they could have no legal efficacy. It is without doubt true that, according to the common law, the death of the principal operates as a revocation of the agency unless the latter be coupled with an interest. *Long v. Thayer*, 150 U. S. 520; *Clayton v. Merrett*, 52 Miss. 353; *Lewis v. Kerr*, 17 Iowa, 73. But the important, perhaps the determining, question in this case is: *Whose* agent was Clark — the custodian of the note and mortgage? The answer to this question involves an examination of the law of escrows:

"An escrow is an obligatory writing (usually, but not necessarily, in the form of a deed), delivered by the party executing it to a third person, to be held by him until the performance of a specified condition by the obligee, or the happening of a certain contingency, and then to be delivered by the depositary to the obligee, when it becomes of full force and effect." Am. and Eng. Encyc. Law, vol. 6, 557.

1. Escrow defined.

This definition, which seems to be collected out of all the authorities, applies fully to the instruments in question in this case. They were, in pursuance of an agreement with Book, delivered by the Harshes to Clark, to be held by him until the performance of a specified condition by Book, and then to be delivered to him. Contrary to the view of the plaintiffs in error, the depositary of an escrow is regarded as an agent of both obligor and obligee; and he can neither return the deed or other instrument to the former without the latter's consent, nor, save upon fulfillment of the agreed conditions, deliver it to the latter without the former's consent. *Roberts v. Mullenix*, 10 Kan. 22; *Grove v. Jennings*, 46 id. 366; *Shirley v. Ayers*, 14 Ohio, 307; *Cannon v. Handley*, 72 Cal. 133. In *Roberts v. Mullenix*, supra, the delivery was made to the grantee without the knowledge of the grantor and without fulfillment of the condition; but in *Grove v. Jennings*, supra, a redelivery to the grantor was made without the authority of the grantee, and without default in the performance of the conditions upon his part. According to these decisions, the depositary of an escrow is not the agent of the depositor, merely, and the agreement of deposit cannot be rescinded by him alone and the escrow withdrawn at his will. It would seem to follow, then, that the death of the depositor could have no greater effect to terminate the agency of the depositary and work a recall of the escrow than could the declared rescission of the con-

2. Escrow not revoked, when. tract of bailment by the depositor in his lifetime. We can think of no agreements terminable by death, which are not equally terminable by the express will of one or the other of the parties before death.

It is said, however, that instruments such as those in question can take effect only by delivery; that de-

livery is the act of the obligor, personally, or of some one lawfully authorized to represent him; that the obligor, being dead, cannot make the delivery, and no one can make it for him, because no one can perform an act for a dead person. We do not understand that a manual delivery of an escrow is necessary to invest the obligee with title to it, or to pass to him the subject of the grant. Our own decisions are to the contrary, and likewise, we think, are those of all the courts:

3. Mortgagee entitled to delivery on performing condition.

"A note placed in escrow takes effect the instant the conditions of the escrow are performed, even though the depositary has not formally delivered it to the payee." *Taylor v. Thomas*, 13 Kan. 217.

The delivery, therefore, is constructively made the moment the conditions are performed. The second delivery, whether actual or constructive, operates retroactively, and, by relation back to the first delivery, is substituted to it in time and effect.

4. Instrument takes effect from deposit.

This doctrine of relation back to the first delivery was countenanced by Lord Coke, who said:

"If the grantee dies between the first delivery and the deed becoming absolute, the deed is good, for there was delivery begun in the life of the parties; *sed postea consummata existens* by the performance of the condition takes its effect by force of the first delivery, without any new delivery." *Perryman's Case*, 5 Co. 84.

It is likewise countenanced by all the authorities: *Peck v. Goodwin*, Kirby (Conn.) 64; *Shirley v. Ayers*, 14 Ohio, 307; *Taft v. Taft*, 59 Mich. 185; *Price v. Rld. Co.*, 34 Ill. 13; *Bostwick v. McEvoy*, 62 Cal. 496; *Foster v. Mansfield*, 3 Metc. 414; *Ruggles v. Lawson*, 13 Johns, *285; *Wallace v. Harris*, 32 Mich. 380; *Prutsman v. Baker*, 30 Wis. 644.

Different reasons for the adoption of this legal

fiction are assigned by the courts. By some, it is said to be equitable in its nature and intent, and devised to avoid injustice. By others, it is said to be for the general purpose of effectuating the intention of the parties, and, in case of deeds in consideration of love or affection, it is resorted to by some courts for the purpose of upholding the transaction as in the nature of a testamentary disposition. Whatever the reasons in support of the doctrine of relation from second to first delivery, there seems to be unanimity in the adjudged cases to the effect that the escrow, for instance, of a *femme sole,* deliverable upon conditions which remain unperformed until after coverture, may nevertheless be delivered upon their performance notwithstanding the intervening disability; and that, likewise, escrows deliverable upon conditions remaining unperformed at the death of the depositor, may also be delivered upon their performance after such death; and that, in such cases, by fiction of law, the second delivery is given effect as of the first. Chief Justice Shaw announced the rule, and gave it authority in this country, in *Foster v. Mansfield,* supra, by saying :

" Whether, when a deed is executed, and not immediately delivered to the grantee, but handed to a stranger, to be delivered to the grantee at a future time, it is to be considered as the deed of the grantor presently, or as an escrow, is often matter of some doubt; and it will generally depend rather on the words used and the purposes expressed, than upon the name which the parties give to the instrument. Where the future delivery is to depend upon the payment of money or the performance of some other condition, it will be deemed an escrow. Where it is merely to await the lapse of time, or the happening of some contingency, and not the performance of any condition, it will be deemed the grantor's deed presently. Still it will not take effect as a deed, until the

second delivery, but when thus delivered, it will take
effect, by relation, from the first delivery. But this
distinction is not now very material, because where
the deed is delivered as an escrow, and afterwards,
and before the second delivery, the grantor becomes
incapable of making a deed, the deed shall be consid-
ered as taking effect from the first delivery, *in order to
accomplish the intent of the grantor*, which would other-
wise be defeated by the intervening incapacity."

The Supreme Court of California had under consid-
eration a case, quite like the present one, in which a
mortgage, with the note of the mortgagor and an-
other, as his surety, were delivered in escrow to await
the clearing up of the title to certain lands. Before
the performance of the condition the surety died. The
condition was, however, performed, and the estate of
the surety was in consequence held to the discharge
of the note ; the court, among other things, saying :

"When the condition on which an original deliv-
ery made in the lifetime of a party transpires, the
conditional delivery becomes absolute, and the abso-
lute delivery takes effect against the contracting par-
ties from the date of the delivery of the contracts as
escrows, notwithstanding the death of one of the con-
tractors before the happening of the condition." *Bost-
wick v. McEvoy*, 162 Cal. 496, 499.

Finally, it can be said that the terms of the con-
tract of deposit by the deceased Harsh — the condi-
tions of the escrow in this case — were carried out
literally and fully notwithstanding his death, and as
they might have been had not his death occurred. It
is true, the reason upon the part of the Harshes for
making the loan was to procure funds to enable Mr.
Harsh to travel in search of health ; but with this
Book had not, either in law or in equity, any concern.
His contract was to furnish the money, not to Mr.
Harsh, but to Mrs. Harsh, the wife. He bound him-
self to invest her with the possession and legal title to

certain funds. He did so. She was then in being to receive that title and possession. Whatever legal difficulties might have existed had the conditions of the escrow required payment to Harsh, and had such payment been rendered impossible by his death, they did not exist under the facts as found by the court. The payment was made to the person to whom Harsh in his lifetime directed it should be made. The judgment of the court below is affirmed.