GEORGE A. GUILD *et al.* V. HARMAN ALTHOUSE.
No. 14,183.   (81 Pac. 172.)

SYLLABUS BY THE COURT.

1. TITLE AND OWNERSHIP—*Deed in Escrow.*  A deed with covenants of warranty, duly signed and acknowledged, purporting to convey land not by metes and bounds but by a description so definite that the land to be conveyed can be ascertained with certainty, and delivered by the grantor to a third person under an agreement with the grantee that the depositary shall deliver the deed to him upon the doing of a certain thing by the grantee, is an escrow.

2. ———— *Death of Grantor Immaterial.*  Upon the performance of the condition by the grantee such deed becomes of full force and effect, and the grantee is entitled to the possession of it, and the death of the grantor does not abrogate the contract of deposit.  (*Davis v. Clark*, 58 Kan. 100, 48 Pac. 563.)

Error from Nemaha district court; WILLIAM I. STUART, judge.  Opinion filed June 10, 1905.  Affirmed.

STATEMENT.

IN 1885 Harman Althouse, his brother John A., and his sister, Hannah Baer, owned the northwest quarter of section 23, in township 2 south, of range 14, in Nemaha county, Kansas, as follows:   Harman owned the north half of the north half and an undivided one-half of the south half; John A. owned the south half of the north half and an undivided one-fourth of the south half; Hannah Baer owned the remaining undivided one-fourth of the south half.

In that year Hannah Baer brought a suit in the district court of the county against her brothers for the partition of the south half of the quarter-section, and the court, having jurisdiction of the parties, adjudged the respective interests as above, and appointed commissioners to partition the land.  The commissioners reported that partition could not be made without

manifest injury, and appraised the land at $2400. John A. elected to take the land at the appraised value. A sheriff's deed was made to him and the sale was confirmed. The record shows that he paid his sister and brother for their respective interests. In the same year, and after the partition suit, the brothers agreed that Harman should own the south half of the north half and John A. the south half of the quarter, except that the latter should have about two acres around the residence on the south half of the north half and Harman should have a strip of equal area off of the south half of the quarter-section. The court further found that each immediately took possession of the land accorded to him by the agreement and had ever since continued in open, notorious, exclusive possession of the same, except that Harman continued to pay taxes on the undivided half of the south half of the quarter-section, and in 1889, with his wife, gave John A. a quitclaim deed to the south half of the north half, while John paid taxes on the south half of the north half and repeatedly mortgaged the same. Yet the brothers divided the land in accordance with their agreement by a partition fence, one part of which was built and, until his death, maintained by John A., and afterward by his widow, one of the plaintiffs in error, while the other part was built and maintained by Harman.

During all the years John A. repeatedly told the neighbors, even after he received the quitclaim deed, that the north "eighty" was Harman's and the south "eighty" was his but that they had not fixed up their papers. When his attention was called to the fact that he was paying taxes on a part of Harman's land and Harman was paying on a part of his, he said it made no difference, as the taxes were about the same.

On January 23, 1901, John A. and his wife, Lizzie B., made and acknowledged a warranty deed for the south half of the north half (excepting the residence

tract) and to a strip off of the north side of the south half to Harman, and by agreement with Harman delivered the deed to plaintiff in error George A. Guild, with instructions to deliver the same to Harman when the latter and his wife should make and deliver their deed for the undivided one-half of the south tract, excepting the strip. On the same day John A. made a will in favor of his wife, Lizzie, for all of his property, and soon thereafter died.

At the time this warranty deed was made there was a mortgage covering the land therein described as well as the southern tract, which mortgage was made by John A. and wife. This mortgage was afterward paid by the widow. After this mortgage was paid Harman and wife made and tendered a deed conveying the undivided one-half of the south tract to the widow, tendered it to George A. Guild and demanded the deed made by John A. and wife just before his death, and Guild refused to deliver the same without the consent of the widow, which she refused.

Soon thereafter the widow caused a notice to quit possession of the south half of the north half of the quarter-section to be served on Harman, and thereupon Harman brought this suit, April 23, 1903, in the district court to compel Guild to deliver the deed held in escrow by him and to quiet his title to the land therein described.

The court made voluminous findings of fact, of which this statement is an abstract, and rendered judgment in favor of the plaintiff, and Guild and the widow bring the case here for review.

*James Falloon,* for plaintiffs in error.

*R. M. Emery,* and *J. E. Taylor,* for defendant in error.

The opinion of the court was delivered by

CLARK A. SMITH, J.:   There are seven assignments
of error, of which only four need be considered, as
those remaining depend thereon.   It is first claimed
that the court erred by giving relief for the reason
that the statute of limitations had run.   It is true the
court found that the defendant below had been in the
open, notorious and exclusive possession of the land in
dispute for more than fifteen years, but it is also true
that within that period he, with his wife, had executed
and delivered to the holder of the legal title a quit-
claim deed to the land.   Unexplained, as it is, this
would probably defeat his claim to title by possession.

It is next claimed that the court erred in admitting
testimony to impeach the record in the partition suit.
It is true parol evidence was admitted of an under-
standing between the brothers, both before and after
the partition suit was determined, that the plaintiff
below was to have the land in dispute, and probably in
consideration of his brother's acquiring the interest of
plaintiff through the partition suit.   The court, how-
ever, found only that such an agreement was made
after the determination of the suit.   Harman in his
petition alleges that his brother, John A., did not in
fact pay him for his interest in the land conveyed by
the sheriff to John A. in the partition suit.   The jour-
nal entry recording the confirmation of the sale to
John A. recites that it was made to appear to the court
that John A. had paid the sum due Harman for his
interest in the land.   That court records for some pur-
poses import absolute verity cannot be questioned; but
if Harman gave John A. a receipt for money that he
did not in fact receive, in consideration of a promise
of John A. to convey certain other lands to him, we
see no reason why Harman should not prove the fact
by other evidence than his own testimony, especially

when the only effect of such evidence is to prove a consideration for the deed to the other land which John A. and his wife did afterward make to Harman.

The claim that the court erred in its findings of fact cannot be sustained. Our attention is not called to any particular finding of fact which it is claimed is not supported by evidence, and we have found none.

The plaintiffs in error contend that the court erred in its conclusions of law. Many of the dealings of these brothers—who appear to have had unbounded confidence in each other—with reference to their respective interests in this quarter-section of land formerly owned by their father, unexplained as they are by the death of one and the statutory incompetence of the other to testify, seem inconsistent with any theory which may be assumed of their respective rights or evidence dense ignorance on their part of all legal forms in their business. Harman and his wife, in 1889, made a quitclaim deed of about forty acres of the land to John A., of which tract Harman never had the legal title, but the title to which was, and for years had been, in John A. Still Harman had been in possession of this tract for several years prior, and has so continued ever since, and has continuously claimed to own it, and John A., from 1885 to the day of his death, as continuously admitted the possession and ownership of Harman.

Very shortly before his death John A. and his wife made to Harman a warranty deed for this tract and placed it in escrow with Guild, to be delivered to Harman when Harman and wife should deliver a deed to another tract of the land, to which Harman had no title and John A. had had full legal title and undisputed possession since the determination of the partition suit in 1885.

The decision of the court gives effect to the evident intention of the brothers as well as of the widow, does justice between the parties, and is sustainable on legal

grounds. The deed from John A. Althouse and wife, Lizzie, to Harman, as the court was justified by the evidence in finding, was placed in escrow with plaintiff in error Guild. It was not void for uncertainty, on the theory that "that is certain which can be made certain," and was not revoked by the death of the grantor. Upon performance of the conditions upon which it was deposited it became of full force and effect as a conveyance, and Harman Althouse became entitled to the possession of it. (*Davis v. Clark,* 58 Kan. 100, 48 Pac. 563; 11 A. & E. Encycl. of L. 344.)

The judgment of the district court is affirmed.

All the Justices concurring.