### CREEDEN, Adm'x, v. NORTH.

No. 21364.  Opinion Filed Nov. 1, 1932.

Paul M. Cameron and Louis Loeffler, for plaintiff in error.

Hughes & Ellinghausen, for defendant in error.

RILEY, J.  This is an action to recover the possession of two letters patent, the one covering a process for treating pipe, tubing, casing, etc., used in producing and transporting crude oil, the other covering a machine for treating waste portions of crude oil.  The action also includes the possession of a written assignment of said patents from the patentee, Artis C. Campbell, to defendant in error, plaintiff below.

The action was brought originally by North against the American National Bank of Bristow, Okla., as escrow holder.  The defendant bank answered and in substance disclaimed any interest other than a mere escrow holder, and set out that Mrs. Bertha Creeden, purporting to represent the heirs of Artis C. Campbell, the deceased, claimed the property in question and had served notice upon the bank not to deliver same to North, and prayed the court to require Mrs. Bertha Creeden and the heirs of Artis C. Campbell to appear and defend or relinquish their claim as against said defendant.  It then pleaded that it was willing to dispose of the property as the court might direct.  Thereupon the court entered an order that Mrs. Bertha Creeden, or the administrator of the estate of Artis C. Campbell, if one had been appointed, be required to come in within 20 days of service of a copy of the order and maintain or relinquish their claim to said property.  Thereafter, Bertha Creeden, having been appointed administratrix of the estate of Artis C. Campbell, filed her answer, alleging in substance that the assignment of said patent, together with certain other agreements relative thereto, had been signed by the patentee, Artis C. Campbell, on the 21st day of May, 1929; that immediately upon the signing of said assignment and other papers they, and the letters patent, were deposited in and accepted by the American National Bank under an agreement and instructions in writing as follows:

"The American National Bank,
    "Bristow, Oklahoma.

"You are hereby instructed upon the payment of $500. on or before thirty (30) days from date hereof by Z. H. North to deliver the following:

"Assignment of United States patents #1513371 covering process for treatment of crude oil with the original patent dated Oct. 28, 1924, and assignment of United States patent #1529688 covering machine

for the treatment of waste portions of crude oil with the original patent dated March 17, 1925. Also agreement between the undersigned affecting the above transfer.

"To Z. H. North and to deliver a receipt for the above amount to Z. H. North showing date of delivery and amount paid. If the above amount is not paid on or before 30 days, same are to be returned to Mrs. Artis C. Campbell.

"It is agreed by the undersigned, that these instructions are binding on our heirs, executors, or assigns.

"Signed and delivered this 21st day of May.

"(Signed) Artis C. Campbell
"(Signed)  Z. H. North."

She further alleged that Artis C. Campbell died on the 6th day of June, 1929; that at the time of his death plaintiff had not paid the $500 referred to in the escrow agreement or any part thereof to said Artis C. Campbell, and had not deposited same in said bank as provided in said escrow agreement; that on June 17, 1929, and before plaintiff North had paid or offered to pay said sum of $500, she had served written notice upon the bank not to deliver the letters patent to plaintiff for the reasons therein stated, which were in substance that the escrow agreement was void because not completed prior to the death of Artis C. Campbell, and that the agreement for the sale and assignment of the letters patent and the escrow agreement itself were obtained from the said Artis C. Campbell under duress, undue influence, and at a time when the mind of the said Artis C. Campbell was so impaired as to render him incompetent to enter into a valid contract. She also alleged that the consideration was grossly inadequate.

Plaintiff replied thereto by general denial, and the issues thus joined were tried to the court, resulting in findings of fact and judgment in favor of the plaintiff. From these findings and judgment the administratrix appeals.

Nearly all the evidence taken goes to the mental capacity of the patentee and the question of the adequacy of the consideration. The other facts are not in dispute. It is conceded that North deposited $500 in the bank within the 30 days, but after the death of Campbell, and that the bank had the money when this suit was commenced.

The trial court specifically found that Artis C. Campbell, at the time of entering into the contract, was 71 years old. That he was capable of transacting the business and knew the nature and consequence of the contract; that $500 was a reasonable price for the sale of said patents and that no undue influence or overreaching was had in connection with the sale.

Plaintiff in error does not seriously assail these findings, but says that she does not wish to be regarded as having abandoned this part of her defense, and that she believes the findings of the trial court in this regard to be against the weight of the evidence.

A careful examination of the record will disclose that the evidence fully sustains the findings.

The principal proposition relied upon by plaintiff in error in her brief is that the execution of the assignment and the deposit of the same and the letters patent under the escrow agreement was a continuing offer only, and that at any time during his lifetime and before the deposit of $500 by the defendant in error, Campbell could have rightfully revoked said offer, and that the "continuing offer terminated before acceptance by virtue of the death of said Artis C. Campbell." She contends that, inasmuch as no consideration actually passed from plaintiff to Campbell at the time the assignment was signed by him and placed in the bank with the letters patent under the agreement and instructions above quoted, the whole transaction amounted only to an offer to sell by Campbell to North, and, therefore, there was nothing to prevent Campbell in his lifetime from withdrawing the offer, and that in any event the agreement terminated with the death of Campbell.

The record clearly discloses a sale and purchase. The assignment itself shows and states that the assignor had "sold, assigned, transferred and set over and by these presents do hereby sell, assign, transfer and set over to Zachariah H. North," etc. The letters patent are particularly described by number, date, and the nature thereof. The consideration was expressly stated as $500. It was signed in due form and properly acknowledged before a notary public. In addition thereto Campbell, in his lifetime, had written a letter to A. C. Snow & Company, his attorney in Washington, who assisted him in procuring the patents, stating therein that he was selling the patents to North. The letter also stated in detail the agreement between Campbell and North and requested said attorney to prepare the papers necessary for carrying out the agree-

ment. Plaintiff also had written that firm, a letter setting out in detail the agreement between Campbell and himself in which he stated plainly that Campbell was selling him the two United States patents for $500, and the Mexican patents for $500, and the Canadian patents for $500, and explaining that each was a separate transaction except that the two United States patents were included in one agreement.

The question then is: Was the transaction a mere offer to sell for a certain price within a certain time, or was it an escrow agreement?

With reference to the nature and requisites of an escrow agreement, in 21 C. J. 866, cited by plaintiff in error, it is said:

"In order that an instruction may operate as an escrow, not only must there be sufficient parties, a proper subject-matter, and a consideration, but the parties must actually contract, and the deposit of the instrument in pursuance of such contract must be absolute and beyond the control of the depositor. Otherwise the instrument so deposited can be withdrawn by the depositor."

The consideration may be either a benefit to the promisor or a detriment to the promisee.

In the transaction involved we find sufficient parties, a proper subject-matter, a consideration, and an actual contract. By the very terms of the deposit agreement the contract was absolute and placed beyond the control of the depositor. Therefore there was a complete escrow.

Plaintiff in error contends, however, that upon the death of Artis C. Campbell before North had deposited the money with the bank under the escrow agreement, the transaction terminated and the heirs of Campbell and the administratrix of his estate were not bound and that the death of Campbell operated to revoke the escrow agreement.

The general rule as to the effect of the death of one of the parties to an escrow is stated in 21 C. J. 871, that when an agreement "has been consummated and a valid deposit of the instrument as an escrow matter, neither party can revoke without the consent of the other, nor, although the rule has not always been strictly applied, will the death of the grantor operate to revoke it."

In Bronx Inv. Co. v. Nat. Bk. of Commerce, 47 Wash. 566, 92 P. 380, it is held:

"Where an agent of several vendors delivered a deed to defendant bank in escrow to be delivered to the grantee on performance of certain conditions, the death of one of the vendors before the performance of the condition was immaterial and did not affect the depositary's obligation to deliver the deed."

In Davis v. Clark (Kan.) 48 P. 563, it was held:

"The depositary of an escrow is the agent of both parties to the same. The contract of deposit is not revocable at the mere will of either of such parties, nor will the death of either of them abrogate the contract of deposit."

See, also, Guild v. Althouse (Kan.) 81 P. 172.

In Jackson v. Jackson (Ore.) 135 P. 201, the question here under consideration is discussed at length and many early cases are cited. It is there pointed out that the rule, contrary to the condition of plaintiff in error, has its origin far back in the common law. There is quoted with approval from 3 Coke Pt. 5, p. 85, In re Perryman's Case, the following:

"As if a man delivers a writing as an escrow to be his deed on certain conditions to be performed, and afterwards the obligor or obligee dies, and afterwards the condition is performed, the deed is good, for there was traditio incohata in the life time of the parties."

The rule appears not to be applied in some states where the mere execution of a deed and placing same in escrow is held not sufficient to take the transaction out of the operation of the statute of frauds, but in this state the rule is well settled that where a vendor, pursuant to a parol agreement to convey lands, executes the deed to the vendee, and deposits same in escrow, to be delivered to the vendee, upon payment of the balance of the purchase price, and the recitals of such deed contained the terms of the parol agreement, including the consideration, is sufficient compliance with the statute of frauds, Scheurer v. Crockett, 108 Okla. 218, 236 P. 30; Akers v. Brooks, 103 Okla. 98, 229 P. 544.

We, therefore, hold that the death of Campbell did not revoke the ecrow agreement.

The judgment is affirmed.

HEFNER, CULLISON, SWINDALL, ANDREWS, McNEILL, and KORNEGAY, JJ., concur. LESTER, C. J., and CLARK, V. C. J., absent.