## ANGLE et al. v. BASS et al.

No. 23493.   Oct. 9, 1934.

Sandlin & Winans, for plaintiffs in error.

J. H. Long, for defendants in error.

PER CURIAM. Plaintiffs in error, Angle and Houston, were the owners of a block of oil and gas leases and entered into a contract with Russell and Ilseng, drilling contractors, to drill a test well thereon to a depth of 2,500 feet or production, for which the drilling contractors were to receive on completion of the well certain leases placed in escrow. Defendants in error, employees of the drilling contractors, stopped work when the well reached a depth of about 2,-300 feet because they were not being paid. Plaintiffs in error, with the consent of the drilling contractors, agreed to assign to defendants in error certain of the leases that would otherwise have gone to the drilling contractors and to place such leases in escrow to be delivered to defendants in error on the completion of the well, as part consideration for completing the well.

There is a conflict in the testimony as to whether or not the agreement with defendants in error was made by the plaintiffs in error or by the drilling contractors. There is sufficient testimony to establish that the contract was made by plaintiffs in error with defendants in error. But while we may assume that the contract was made by plaintiffs in error, yet it is immaterial in our view of the case because the plaintiffs in error entered into an escrow agreement with defendants in error, both parties signing it, which reads as follows:

"Instructions to First National Bank, Duncan, Oklahoma, November 28th, 1928.

"You are hereby authorized to deliver assignments of oil and gas leases attached to this contract upon completion of a test well that is being drilled in section twelve (12), township one (1) south, range seven (7) west on the M. C. Houston farm, when well is completed to 2,500 feet, unless oil or gas is found in paying quantities at a lesser depth.

"In case of production these assignments with contract attached is to be delivered at the time above specified to the ones that sign this contract, or to their order. * * *"

Plaintiffs in error executed the assignments referred to in the escrow agreement, including the assignment to the oil and gas lease involved in this suit, and placed the assignment in question, together with other assignments, and the escrow agreement with the First National Bank at Duncan as depositary. The employees resumed drilling operations and completed the well as a dry hole to a depth of 2,500 feet about February 1, 1929. About the time the well was completed, plaintiffs in error went to Texas. About the middle of March, Bass and Wininger, two of the defendants in error, requested the bank to deliver the assignment to the lease, but the bank required that the consent of plaintiffs in error be obtained. Defendants in error did nothing further about it and on May 19, 1929, the lease lapsed for nonpayment of rentals, the assignment still being held by the bank.

Suit was instituted in August, 1929, by the lessor to cancel the lease for nonpayment of rentals, to which suit the plaintiffs in error and defendants in error were made parties. Defendants in error, by cross-petition, sought judgment against plaintiffs in error for

breach of contract in refusing to deliver the assignment of the lease. Trial was had by the court, a jury being waived, and judgment was entered in favor of defendants in error against plaintiffs in error for the reasonable value of this lease, and it was from this judgment plaintiffs in error took this appeal.

The only assignment of error to be considered is that the evidence was insufficient to sustain the judgment. To determine this question, it is necessary to review carefully the evidence.

H. A. Bass, one of the defendants in error, testified that plaintiffs in error employed him and the others and agreed to deliver them an assignment to the lease on completion of the well to 2,500 feet or production; that plaintiffs in error would assign it and deliver it themselves; that the well was completed to 2,500 feet as a dry hole; and that plaintiffs in error refused to deliver the assignment to them. This standing alone would support the judgment. But Bass further testified that he signed the contract or escrow agreement; that the contract was in the bank with the lease; that it is the agreement he had with plaintiffs in error; that the oral agreement was before the written agreement; that in March, 1929, in company with Wininger, he went to the bank and asked Mr. Prentice, the president of the bank, to deliver the assignments and was told by him that he could not without Angle, then in Texas, authorizing it; that he walked out of the bank not knowing what else to do, and did not see plaintiffs in error, who were out of town, and did not say anything to them about it at that time because the rental was due shortly and while plaintiffs in error were both gone; and that they said Houston was in Oklahoma City and Angle, who told him to go ahead and they wells.

Bert Wininger, another one of defendants in error, testified that he had purchased and was assigned the rights of three of the employees; that before he bought he talked with Angles who told him to go ahead and they would assign the lease to him, and he then bought; that plaintiffs in error signed the papers and they were put in the bank until the well was put down to 2,500 feet or production; that after the well was completed he talked to plaintiffs in error and they refused to deliver the assignment to him. But on cross-examination, Wininger testified that he knew the papers were in the First National Bank being held to be delivered to whomever they belonged after the well was completed; that he went down to the bank after the well was completed to get the assignment and was told it would deliver only if Angle and Houston authorized the delivery; that he could not get the assignment out of the bank and did not pay rentals because he could not get the lease. He again testified that he understood he was working on the well for Angle and Houston; that it was his understanding that this agreement in the bank was simply a disposition out there and Houston and Angle were going to deliver those leases to him; that he demanded them and they refused; and that it was his understanding when he signed the agreement that he would not have to depend on anybody other than Houston and Angle for the delivery of the leases. But again, on cross-examination, the same witness testified that he knew the leases were to be put in escrow and held under some kind of an escrow contract until the well was completed, and they would deliver the assignment when the well was completed. He testified: "My understanding was the bank would hold them until the well was completed at 2,500 feet or production and they would deliver the leases at that time." Again: "There wasn't a word said about the bank delivering it." And again: "I knew they (the bank) were to hold the leases until the well was completed."

Tom Wigley, defendant in error, testified that plaintiffs in error were to give them some acreage for working on the well; that Mr. Houston agreed to deliver the papers when the well was completed; that he did not ask for them; that plaintiffs in error did not refuse to give the papers to them; that they said the papers were in the bank; that he went to the bank but did not get them; that they (the bank) said Mr. Angle was supposed to get them. On cross-examination Wigley testified that he understood the leases were in the bank; and that he signed an agreement when the well was completed for the bank to deliver to him certain assignments to leases.

The president of the bank, called by plaintiffs in error, testified that he told Bass and Wininger, when they asked for the assignments, that he had no instructions to make any delivery of any assignments; that it was the rule of the bank to have the authorization of all parties before papers are deliv-

ered, regardless of what the escrow agreement provides; that this is the custom of banks everywhere and of this bank; and that he did not recall that Angle or Houston ever told him not to deliver the assignments. This testimony was uncontradicted.

There was no testimony that plaintiffs in error were advised or knew of the bank's custom in such cases, or of the bank's requiring their consent or authorization before making delivery under the escrow agreement; that defendants in error ever notified plaintiffs in error of the bank's requirement of further consent or requested plaintiffs in error to give such consent; or that plaintiffs in error claimed the assignments or objected to delivery by the bank, or interfered with the performance of the escrow agreement by the bank.

For the purpose of determining the question as to the sufficiency of the evidence to sustain the judgment, the foregoing testimony, with all reasonable inferences therefrom, must be taken as true, even though witnesses for plaintiffs in error testified to an entirely different state of facts.

The oral agreements and understandings between the parties were merged into the written escrow agreement, and the intention of the parties must be ascertained from the writing alone. Oklahoma Statutes 1931, § 9463. The escrow agreement provides that the bank should deliver the assignments on the happening of the event, in this case the completion of the well. There was no provision in the escrow agreement requiring the further consent of plaintiffs in error before delivery could be made. The obligation of the depositary was absolute and unqualified to deliver the papers on the completion of the well. The defendants in error signed the escrow agreement and testified that they knew the assignments were held in the bank under the escrow contract until the well was completed.

Under this evidence it must be held that the defendants in error were bound by the terms of the escrow agreement; that they knew the assignments were not in the custody or control of plaintiffs in error; and that a demand on plaintiffs in error for the assignments could avail nothing.

There was no showing, and defendants in error do not contend, that plaintiffs in error interfered with the depositary's performance of its duties under the escrow contract. A demand on the plaintiffs in error to deliver the assignment theretofore placed in escrow and out of their control and their refusal to deliver an instrument not in their control cannot without more give rise to a cause of action against plaintiffs in error, especially since all parties knew the assignment was in the bank.

The remaining question to be decided is whether or not the assignors of an oil and gas lease are liable in damages for the refusal of the escrow agent to deliver the assignment upon the happening of the event upon which the assignment is to be delivered.

The rule is stated in 21 C. J. 878, as follows:

"After the condition has been performed or the contingency has occurred, it becomes his (the depositary's) duty to deliver to the grantee the instruments deposited as escrows, under the authority shown to be vested in him to make such a delivery. * * *"

And again in 21 C. J. 893:

"Upon performance of the condition the grantee or obligee is entitled to delivery, which will be enforced by a decree of court. Thus, a bill in equity will lie to compel the delivery of a deed held as an escrow where the grantee has done all in his power to fulfill the condition and has been prevented from doing so by the sole act of the grantor, or, upon demand and refusal, he may maintain an action of detinue to recover the instrument. * * * If the depositary refuses to deliver, the remedy is not against the other party to compel specific performance of the escrow contract, but against the depositary to obtain possession of the instrument. * * * If the depositary refuses to make the delivery due to the deliveree on the ground that the depositor claims the escrow, the depositary may be held liable for conversion."

In Creeden v. North, 160 Okla. 90, 15 P. (2d) 991, an assignment of letters patent was placed in escrow to be delivered upon the payment of $400 in thirty days. Shortly thereafter the assignor died, and, after his death, but within the thirty days, the consideration was paid to the depositary. The heirs of the assignor attempted to set aside the transaction. The court held that the depositary of the escrow is the agent of both parties; that the death of the grantor does not terminate the agency; and that the depositary rightfully delivered the assignment on performance of the condition after the death of the assignor.

We hold that under the facts in this case the remedy is against the depositary for its refusal to deliver, rather than against the depositor.

Defendants in error cite Holtz v. Conner, 129 Okla. 235, 264 P. 604, and Swindler v. Selby, 130 Okla. 294, 267 P. 471, in support of the judgment below. These cases hold that where there is any competent evidence reasonably tending to support the verdict, the same will not be disturbed on appeal. But in this case the evidence taken in the most favorable view for defendants in error is insufficient reasonably to sustain the judgment.

Judgment of the trial court is reversed and the cause is remanded to the lower court for proceedings in accordance herewith.

The Supreme Court acknowledges the aid of Attorneys Roscoe E. Harper, W. L. Eagleton, and Saul Yeager in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Harper and approved by Mr. Eagleton and Mr. Yeager, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.