## TAYLOR v. HARKINS et al.

No. 7858—Opinion Filed Oct. 31, 1916.

Rehearing Denied Feb. 4, 1919.

(178 Pac. 117.)

1. **Escrow—Possession—Title.**

Where possession of an escrow is obtained without performance of the condition upon which delivery thereof was to be made, no title passes thereby.

2. **Deeds—Transfer of Title—Delivery.**

A deed does not operate to convey title until delivered.

(Syllabus by Bleakmore, C.)

Error from District Court, Coal County; J. H. Linebaugh, Judge.

Action by Jack Taylor against C. C. Harkins and others. Judgment for defendants, and plaintiff brings error. Affirmed.

Geo. A. Fooshee, for plaintiff in error.

Geo. E. Jahn, for defendants in error Harkins and Towery.

C. E. B. Cutler and E. N. Holland, for defendant in error J. A. Jackson.

Opinion by BLEAKMORE, C. This action was commenced in the district court of Coal county by Jack Taylor, seeking recovery on a promissory note in the sum of $450, and interest, against C. C. Harkins and C. E. Towery, and foreclosure of a mortgage securing same on certain lots in the town of Coalgate, to which it was alleged J. A. Jackson was asserting some claim. Defendants Harkins and Towery answered, denying in effect the execution and delivery of the note and mortgage sued on. Jackson answered by general denial, alleging invalidity of the mortgage in suit, and setting up title to the property in himself. Upon trial to the court judgment was rendered for defendants, and plaintiff has appealed.

It appears from the evidence that on July 28, 1914, pursuant to an agreement between them by which Jack Taylor sold to Harkins and Towery an automobile for the sum of $450, the three procured a notary public to prepare the note and mortgage in suit, which were then signed. Neither was dated, and the notary did not then certify to the acknowledgment. It was understood between these parties that Harkins and Towery did not at the time own the lots described in the mortgage, but, by virtue of negotiations then pending, would subsequently acquire title thereto, and thereupon such note and mortgage should become effective. With this understanding the instruments were left in the custody of the notary. On November 28, 1914, upon the representation by Taylor that Harkins and Towery had acquired such title the notary inserted that date in the instrument and certified to the acknowledgment of the mortgage on that day by the mortgagors and delivered the same to Taylor, who caused it to be recorded. The acts of the notary were without the presence, knowledge, or consent of Harkins and Towery, or either of them.

Towery testified that the mortgage was never acknowledged, that it was a conditional one and that he and Harkins were to return and date and acknowledge the same when they acquired title to the property, and that the notary was instructed not to deliver the same until this was done. He further testified:

"Q. How came this note and mortgage to be left with the notary? A. We left the mortgage there because it was not completed, and we told Judge Ralls at that time if we could make the arrangements we would come back and complete and if we didn't complete

it the auto was to remain in Jack Taylor.

"Q. Mr. Towery, you say you never received any deed to this property? A. No, Sir.

"Q. You say you never acknowledged this mortgage before G. T. Ralls as notary public? A. No, sir.

"Q. You executed this instrument before him as a notary public? A. Yes, sir.

"Q. You signed it? A. Yes, sir.

"Q. How come you to sign it if you wasn't going to give one? A. We were to come back.

"Q. You had done all that you could do? A. No, sir.

"Q. What was necessary? A. The date and acknowledgment.

"Q. The notary public was the person to place the date in there and sign it up? A. Well. I don't know, we were to come back and acknowledge it and date it.

"Q. When were you to come back? A. whenever Mrs. Harkins called for the property. We were to turn it loose so she wanted the property and we had to let it go.

"Q. As a matter of fact, you had traded for this before the mortgage was given. A. Yes. sir; Harkins and myself.

"Q. With Mr. Mayer? A. Yes, sir.

"Q. The only trouble was there was to be a mortgage foreclosed before the legal title could be made and you had possession of the property from the time you made a deed to Mike Mayer to the corner lot. A. The property was turned over to us and we collected the rents and turned them over to her."

The testimony of Harkins was substantially the same.

At the time of the execution of the instruments in question legal title to the lots was in one Earnest George, who had executed a mortgage thereon to the First National Bank of Coalgate. Upon the subsequent foreclosure of such mortgage the lots were sold, and conveyed by sheriff's deed to one Mike Mayer. who it seems had some agreement (whether in writing or parol not appearing. and the terms of which are not disclosed) by which he was to convey the same to Harkins and Towery when he had acquired title thereto, and pursuant to which, after the receipt of the sheriff's deed, he, joined by his wife, executed a deed describing the lots to C. C. Harkins. and notified him thereof.

This deed was left in the First National Bank of Coalgate, but apparently was always in the custody and control of Mayer, who testified specifically that the same was never delivered to Harkins. Some time after its execution Mrs. Mollie Harkins, the mother of C. C. Harkins, requested Mayer to execute a deed conveying said lots to her, whereupon Mayer, after consulting C. C. Harkins relative thereto, destroyed the deed executed by himself and wife to Harkins and on Jan. 15, 1915, executed a deed conveying said lots to G. W. and Mollie Harkins who in turn, on February 18, 1915, conveyed the same to J. A. Jackson. Jackson had no knowledge of the transaction between Taylor and Harkins and Towery.

The trial court found that, at the time of the execution of the note and mortgage to Taylor, Harkins and Towery were not the owners of the property and did not thereafter acquire a title to the same; that the delivery of such note and mortgage by the notary was without their knowledge or consent; that the deed from Mayer to Harkins was not delivered; and concluded as a matter of law that such mortgage created no lien upon the lots involved.

We are of opinion that the evidence abundantly sustains the findings, and that the conclusion of the trial court is correct. There was no proper execution and delivery of the note and mortgage in suit. The delivery thereof was obtained by the plaintiff without the happening of the contingency upon which all agreed delivery was dependent, namely, the acquisition of title to the lots in question by the mortgagors.

"Where possession of an escrow is obtained, without performance of the condition upon which a delivery to the grantee was to be made, no title passes." Hunter Realty Co. v. Spencer, 21 Okla. 155. 95 Pac. 757, 17 L. R. A. (N. S.) 622.

Neither the mortgage to plaintiff nor the deed from Mayer to C. C. Harkins was delivered, and therefore never became effective as a lien or conveyance. A deed does not operate to pass title until delivered. Powers v. Rude, 14 Okla. 381, 79 Pac. 89; Hunter Realty Co. v. Spencer, supra; McCuan v. Gordon, 44 Okla. 254, 144 Pac. 348; Daniel v. London, 44 Okla. 297, 144 Pac. 596.

The judgment of the trial court should be affirmed.

By the Court: It is so ordered.