[Civ. No. 5123. Second Appellate District, Division One.—March 7, 1928.]

H. C. BROWN, Respondent, v. HARRY M. WILSON, Appellant.

McCaughan & McCaughan and Frank . H. Jaques for Appellant.

H. M. Barstow and W. J. Variel for Respondent.

WOOD (W. J.), J., *pro tem.*—This is an appeal by defendant from a judgment quieting plaintiff's title to an undivided interest in two parcels of land. On January 18, 1921, the parties to the action left written escrow instructions with the Exchange National Bank of Long Beach, containing these provisions: ''The undersigned hereby instruct you to carry out the conditions of the following agreement entered into on the above mentioned date wherein H. C. Brown, Agt., address 243 East Ocean Avenue, agrees to sell and Harry Wilson, address Naples, California, agrees to purchase the following described property: Lots 14 and 15 Block 33, Tract No. 500, Naples, California, in the County of Los Angeles, State of California for the sum of $400.00 payable as follows: Escrow deposit herein $50.00, additional cash $350.00 on or before 90 days or When Certificate of Title and Municipal Certificate are in your bank. . . . In case seller is not able to give good title within ninety

days the deposit herewith shall be returned on demand. . . . " Thereafter plaintiff experienced difficulty in securing deeds for delivery into escrow for the reason that the property was owned by several individuals, some of whom had died. He did, however, obtain deeds for a 5/26ths interest in the lots and on July 5, 1921, executed a quitclaim deed covering the premises to the defendant. The trial court found: "That the aforesaid deed was placed in an escrow in a bank. at Long Beach, California, then known as Exchange National Bank, of Long Beach, California. The court finds that contrary to the terms of said escrow that on the 6th day of July, 1921, the deed hereinafter mentioned was recorded in Book 276, page 262, of Official Records." Upon recordation the deed was returned to the bank. Defendant did not pay into escrow, or otherwise, any sum other than the original deposit of $50, and plaintiff did not place in escrow deeds conveying anything more than the 5/26ths interest. Shortly prior to March 9, 1922, the escrow officer of the bank requested plaintiff to dispose of the escrow and about the same time defendant told plaintiff that he wished to withdraw his deposit. Accordingly plaintiff and defendant on March 9, 1922, signed and left with the bank the following: "We mutually agree to cancel our instructions in this escrow and release the $50.00 deposit. Please give Mr. Jaques deeds now held in Brown-Wilson escrow No. 11306." Defendant thereupon received the $50 and Mr. Jaques (plaintiff's attorney) received the deeds.

The necessity for this litigation arises from the fact that the quitclaim deed was erroneously recorded. The finding of the trial court that the deed was recorded "contrary to the terms of the escrow" is fully sustained by the evidence. It has been held that "where a deed is placed in the hands of a third person as an escrow with an agreement between the grantor and grantee that it shall not be delivered to the grantee until he has complied with certain conditions, the grantee does not acquire any title to the land nor is he entitled to a delivery of the deed until he has strictly complied with the conditions." (*Los Angeles City High School District* v. *Quinn*, 195 Cal. 377 [234 Pac. 313].) Since the defendant had not complied with the conditions of the escrow, having paid into escrow only the sum of $50, he had not acquired title to the land or a right to the deed.

The recordation having resulted in a cloud upon his title plaintiff had a right to the judgment of the court removing it.

It is the contention of appellant that "judgment could have been entered in plaintiff's favor at the trial for $76.90 the *pro rata* of purchase price offered by defendant who had the corresponding right to be judicially declared upon payment, the owner of the 5/26ths interest." The parties canceled their escrow instructions by clear and concise language on March 9, 1922, at which time the buyer withdrew his deposit and the seller received back his deeds. Defendant also promised to go to the office of plaintiff's attorney and execute a reconveyance of the interest he had received. Clearly, it was their intention to close the transaction at that time. No instrument was signed by them at any time other than the document which they referred to as their "escrow instructions." Defendant points out that, referring to the occasion of the withdrawal of his deposit, he testified as follows: "Mr. Brown told me then that he would deed the units to me as fast as he got them. Q. Anything said about the payment of the entire amount . . . as set out in the agreement? A. I told him any time that he got them I would pay him as I got them." This testimony he claims "is controverted by inference only." If this conversation did in fact take place it formed, if any, a new agreement, since the first one had been canceled. To be enforceable as a new agreement it would have to be in writing. (Sec. 1624, Civ. Code.) Since it was not in writing it was not enforceable. Moreover, it was not supported by a sufficient consideration. The record discloses that defendant has paid nothing whatever to plaintiff and is not bound to him in any way by contract. He voluntarily withdrew his deposit of $50 and now proposes to pay to plaintiff the sum of $76.90 and retain the fractional interest in the property which was improperly placed in his name through the erroneous recordation of an instrument used in the canceled escrow. This he cannot do.

The judgment is affirmed.

Conrey, P. J., and York, J., concurred.