ELMER LINDBERG, Appellant, v. LUTHER YOUNGGREN et al., Appellees.

No. 39453.

JANUARY 14, 1930.

*Keenan, Barnes & Clovis* and *Ferguson & Ferguson,* for appellant.

*Tinley, Mitchell, Ross & Mitchell* and *Orr & Anderson,* for appellees.

KINDIG, J.—The following facts are material to a discussion of the propositions advocated by the parties involved. On July 19, 1921, the appellant owned 240 acres of land in Page County.  Upon that date, he entered into a written contract in duplicate, whereby the Carl G. Wenstrand Company, a corporation transacting business at Shenandoah, purported to buy said farm for a consideration of $78,000, payable: First, by the assumption of indebtedness on the land, aggregating $48,000; and, second, by stock in the corporation for the remaining equity, approximating $30,000. At or about the same time, a deed conveying the premises to the Carl G. Wenstrand Company, incorporated, was executed by appellant and his wife. Simultaneously therewith, an escrow agreement was signed by appellant and the Wenstrand Company, under which the deed was placed with the Farmers National Bank of Shenandoah, to be there held until the corporation stock was delivered, as provided in the land contract. Soon thereafter, Carl G. Wenstrand asked appellant for permission to remove from the deed the grantee's name, Carl G. Wenstrand Company, incorporated, and substitute therefor, as grantee, the name of the defendant-appellee Luther Younggren. Consent to the change was duly given by appellant. Immediately thereafter, on the 20th day of July, 1921, appellee Luther Younggren filed for record the deed containing his name as grantee. Following that transaction in the chain of title, appellee Luther Younggren, on October 1, 1923, deeded said realty to his mother, the appellee Emma Younggren, for a consideration whereby she canceled certain indebtedness held against her son, and assumed and agreed to pay the mortgages upon said 240-acre farm.

Appellant claims that he never received the stock from the Wenstrand Company, nor any other consideration for the land, except that the mortgage indebtedness named in the sale contract was assumed by the grantee, Luther Younggren, through acceptance of the deed. Many theories are advanced by appellant as a basis for his right to recover $32,000, which is the par value of the stock named in the contract; but, under the record here

presented, we find it material to consider only two of them. Briefly stated, they are: First, that the appellee Luther Younggren in fact purchased the realty directly from appellant, and Carl G. Wenstrand and the Carl G. Wenstrand Company, incorporated, were merely the agents who negotiated the transfer; and, second, that, assuming appellee Luther Younggren did not buy directly from appellant, yet the deed aforesaid was in escrow, and while appellant consented to the substitution of names, as before explained, he did not agree that the escrow should be broken, and consequently the deed was delivered to the appellee Luther Younggren without appellant's knowledge or consent. Therefore, according to appellant's claim, his vendor's lien at all times remained, and now continues upon the land.

Replying to appellant's contention in that regard, the appellees assert: First, that neither Carl G. Wenstrand nor the Carl G. Wenstrand Company, incorporated, represented them in any way, and that the appellee Luther Younggren did not purchase the farm from the appellant, but, on the contrary, bought the same from Carl G. Wenstrand; second, that the appellant consented to the substitution of grantees in the deed, and permitted, ratified, and approved the delivery of that instrument; third, that the appellant, because of his conduct in the matter, is now estopped from claiming that the deed was not delivered in the manner and way claimed by the appellee Luther Younggren; and, fourth, that the appellee Emma Younggren was an innocent purchaser, without notice of appellant's alleged equities, and furthermore, it is asserted that she paid a valuable consideration for the property, and therefore has full and complete title thereto.

Such, in a broad way, are the arguments of the respective parties. A more detailed statement of facts will be made in connection with the discussion relating to each proposition above set forth.

I. To whom did appellant sell his real estate? That is the first question. While he maintains that the sale was directly to the appellee Luther Younggren, the record, as well as the testimony of this appellee and Carl G. Wenstrand, indicates that the transaction originally was with the Carl G. Wenstrand Company. By the express provisions of the contract itself, the Wenstrand Company was the vendee. Likewise, the deed, as original-

ly executed, named the corporation as the grantee therein. Carl G. Wenstrand says that the sale transaction was entirely between appellant and the corporation. Luther Younggren, the appellee, also testified that Wenstrand, or the Wenstrand Company, was not his agent in this affair; and moreover, this appellee asserted that he did not buy from the appellant.

Although appellant, who now is about 46 years of age, had been a farmer most of his life, yet, a year and a half before the transaction under consideration, he was engaged in the automobile business, and thereby came in contact with the business world. So, when the contract and deed were made, he knew that, according to the written documents, the corporation, and not the appellee Luther Younggren, was obtaining the acreage above designated. Furthermore, there are many other facts and circumstances, in addition to the testimony of Carl G. Wenstrand and the appellee Luther Younggren, which indicate that the original transaction was between appellant and the corporation. Throughout appellant's testimony there is declaration after declaration to the effect that Carl G. Wenstrand led him to understand that Younggren was buying the land. Yet there is nothing anywhere to show that Younggren in any way caused the appellant so to believe. Mr. Wenstrand, at the time in question, was a practicing lawyer at Shenandoah. He was well acquainted with the appellant. In addition to the law practice, Wenstrand, his brother, and others operated the Farmers Loan & Mortgage Company. No doubt the appellee Luther Younggren had many transactions with the Mortgage Company and with Wenstrand.

As before indicated, the appellant became heavily obligated financially because of adversities in the automobile business. Advice was sought from Carl G. Wenstrand, who suggested to the appellant that he sell the heavily mortgaged farm, and thereby escape the overweighing financial burden. The appellant accepted the advice, and sought a purchaser. About that time, Carl G. Wenstrand, his brother, and appellant were engaged in the organization of the Carl G. Wenstrand Company, a corporation. It is said by appellant that the appellee Younggren was also a promoter of this enterprise. Whether this is true, it is difficult to ascertain from the record. Anyway, appellant and Wenstrand were engaged in the promotion scheme, and as a

part thereof, it appears, the land contract previously mentioned was prepared and executed. Something was said at the time about having the farm appraised by state officials, for the purposes of the stock transfer. Apparently this was never done. Obviously, appellant believed in the enterprise, assisted in its promotion, and entered into the agreement accordingly. Immediately thereafter, the appellant was employed by Wenstrands to perform certain duties connected with the operation of the Farmers Loan & Mortgage Company, previously named. Stock was never issued by the Wenstrand corporation. Before the organization was completed in that respect, it appears that Wenstrand was indicted for certain offenses not connected with this transaction, and then later convicted, and sent to the penitentiary.

Younggren, at the time, did not own stock in the Carl G. Wenstrand Company, incorporated; for, as before indicated, none had been issued. Naturally, then, it is more plausible to believe that Younggren would not agree to deliver that which had no existence. All power to issue stock was in the corporation, and therefore that institution could agree with appellant to deliver him stock in exchange for properly appraised real estate. Not only did the corporation have the power, but it had the incentive and the purpose so to do; for it was through that method that the organization was to be completed. Undoubtedly Carl G. Wenstrand told Lindberg that the corporation would resell the land to Younggren. A reason given therefor by Wenstrand was that Younggren was financially responsible, and his assumption of the mortgage indebtedness would be a real protection. This is what the appellant desired. At no time, however, does it appear that the appellant ever had a contract with Luther Younggren whereby the latter agreed to buy the farm. Payment was never demanded from Younggren by appellant, although the latter knew the former had obtained the deed and filed it. Such information was received by the appellant, according to his testimony, soon after Younggren obtained the instrument. But when in the possession of such knowledge, he did not complain to Younggren. Rather than so doing, appellant inquired of Carl G. Wenstrand concerning why the deed was taken from escrow. Thereupon Wenstrand stated to the appellant that Younggren feared suits would be started and judgments obtained which might incumber the title. Both appellant and Wenstrand were

anxious that Younggren assume the mortgages. Other reasons were stated by Wenstrand, which seemed satisfactory and agreeable to the appellant. His conduct in that regard and in other respects indicates that he approved and ratified the delivery of the deed by Wenstrand to Younggren. Another circumstance is a change made in the contract so that the instrument would include "feed bunks." Request for this was made by Younggren. Elof Wenstrand (a brother of Carl's) inserted the additional provision, and obtained appellant's written consent thereto. After the deed was delivered and appellant knew thereof, he moved from the land, which he occupied until March 1, 1922, and delivered possession thereof to Luther Younggren, the appellee. More than this, appellant met Younggren at Wenstrand's office, a long time after the deed was delivered, and there the following conversation took place:

"Well, he [Younggren] said: 'I never can find them [the Wenstrands]. I can't get things straightened out.' He seemed to be quite peeved about it. I said: '* * * You haven't anything to be peeved about, for he [Carl G. Wenstrand] bought my farm out there, and I never had any settlement on that.' "

It is true appellant contends that Younggren said to him:

"* * * Carl [Wenstrand] and me [Younggren] will make that all right with you [appellant]. As soon as I settle up with Carl, I will pay you."

Nevertheless, appellant, even upon that occasion, declared that Wenstrand had bought the land; and, under the facts and circumstances previously set forth and many others contained in the record, it is obvious that, notwithstanding appellant's claim, Younggren did not agree to pay appellant for the land. Why should he, under the circumstances? For already payment had been made by Younggren to Carl Wenstrand, through the transfer of mortgages. In fact, Wenstrand was thus paid by Younggren in January, 1922, before appellant delivered Younggren possession of the premises. A contract purporting to settle the land transaction between appellant, Wenstrand, and Younggren was signed by Wenstrand and appellant. Younggren refused to execute the instrument, saying that he never had any connection at all with appellant. Under the terms of that agreement, ap-

pellant was to receive 125 shares of stock, ''as a part of the consideration for said land, over and above the mortgage indebtedness,'' and for the balance thereof, appellant agreed to accept certain mortgages, after deducting specified obligations of appellant's.

Dispute arises concerning the amount due Wenstrand for financial outlays made in behalf of appellant, as contemplated by said agreement; and it is difficult, under the record, to arrive at a conclusion regarding this. Likewise, appellant denies that he received the 125 shares of stock in the Farmers Loan & Mortgage Company. Some of this stock, however, was procured by Wenstrand and placed in a deposit vault marked for appellant, Lindberg; and after the alleged settlement, appellant voted this stock at a meeting of the corporation. We do not find or decide whether there was a complete settlement between Wenstrand and appellant, but the incident has a significant bearing on the proposition that Younggren did buy from Wenstrand. Again, it appears that Annis & Rohling Company brought an action to foreclose one of the mortgages on this land. Named in the original notice were the defendants Elmer C. Lindberg (the appellant), Sadie H. Lindberg (appellant's wife), A. Luther Younggren (appellee), and others. Recited in the original notice was the fact that Luther Younggren, the appellee, ''had purchased said land'' from ''Carl G. Wenstrand.'' Denial of that fact was not made by appellant in any way.

The foregoing is related for the purpose of showing that, through various actions and in many ways, appellant indicated that Wenstrand had bought the farm and owed an obligation for it. No attempt has been made to set out all the facts and circumstances, but some of the outstanding points have been mentioned. On the whole record, we are constrained to hold that appellant sold to the Wenstrand Company, and not to the appellee Luther Younggren.

II. Assuming, without conceding, the foregoing conclusion, appellant next contends that the deed aforesaid, being placed in escrow, was never properly removed therefrom, and consequently he still has a lien on the land sold, for the purchase price thereof.

Of course, if the deed was in escrow, as contended, and the depositary wrongfully delivered it to the grantee or another ''without the performance of the conditions upon which it was

to be delivered,'' no title passes, and, as said in *Tutt v. Smith*, 201 Iowa 107: ''* * * a subsequent purchaser from the grantee * * * acquires no title, and will not be protected.'' To the same effect see *Jackson v. Rowley*, 88 Iowa 184, and *Jackson v. Lynn*, 94 Iowa 151. Those authorities, of course, control where the facts make them applicable. Here, however, there is a distinction between the facts presented and those involved in the cited cases. As before indicated in the previous discussion, appellant consented to the substitution of grantees in the deed, and, in addition thereto, he ratified and approved the delivery of the deed to the appellee Younggren. Consequently, the rule of law contended for will not permit recovery, under the circumstances. Without such approval and ratification, the result would have been different. Moreover, with full knowledge of the facts, appellant permitted the appellee Younggren to take possession of the premises, pay the interest and taxes, and finally convey the land to another, without any indication at any time that the title was not perfect, or that there was any claim for the purchase price, growing out of the transaction between appellant and Carl G. Wenstrand. Silence in fact was continued by the appellant for long over two years. Appellant's delay, under the circumstances, must be considered before Younggren can be compelled to pay the purchase price the second time or lose the land. Such conduct on appellant's part estops him from obtaining the relief here sought. *Haven v. Kramer*, 41 Iowa 382. Therein it is said, on page 387:

''* * * we are of opinion that the plaintiff, by his laches [covering a period of seven months], is estopped to assert title against a bona-fide purchaser from James H. Haven.''

Considering, then, the ratification and estoppel and all the other facts and conditions previously recited, it is apparent that appellant has no lien upon appellees' premises.

III. With appellant's authorization and approval thus established, it is apparent that title vested in the appellee Luther Younggren. Substitutions of grantees may be made in a deed,

with the consent of the parties concerned. *Mc-Cleery v. Wakefield,* 76 Iowa 529; *Brown v. Brown,* 142 Iowa 125; *Augustine v. Schmitz,* 145 Iowa 591; *Tallman v. Huff,* 65 Colo. 128 (173 Pac. 869); *Tobey v. Kilbourne,* 222 Fed. 760.

Hence, as against appellant's claims here asserted, the appellees have a superior title. Whether, in any event, as suggested by appellant, a recovery can be had by him through the corporation against appellees because the consideration was paid by the appellee Luther Younggren to Carl G. Wenstrand, instead of to the corporation, we do not now suggest or decide. The corporation is not a party to this litigation, and appellant's suit was not prosecuted upon that theory.

Parenthetically, it is here noted that the index in the abstract simply refers to the exhibits by number, as they were introduced at the trial, without any explanatory note indicating to which exhibit an individual number refers. There were many exhibits, and consequently our labors were greatly increased by counsel's failure to observe the rules in that regard.

For the reasons previously named, the judgment and decree of the district court should be, and hereby is, affirmed.—*Affirmed.*

MORLING, C. J., and EVANS, FAVILLE, ALBERT, and GRIMM, JJ., concur.