HOME-STAKE ROYALTY CORP. et al. v. McCLISH et al.

No. 28783. May 28, 1940.

*103 P. 2d 72.*

Marvin T. Johnson, of Tulsa, for plaintiffs in error Home-Stake Oil & Gas Company, Home-Stake Royalty Corporation, and B. Fleeger.

Joseph A. Gill, Jr., Charles R. Fellows, and Ray S. Fellows, all of Tulsa, for plaintiff in error Stanolind Oil & Gas Company.

Stephen A. George and John Clark Caldwell, both of Ardmore, for defendants in error.

DANNER, J. Buster McClish and Ernest W. Tate brought suit against the defendants, Grady Wallace, Home-Stake Oil & Gas Corporation, Home-Stake Royalty Corporation, B. Fleeger, and Selden Henry to cancel a mineral deed executed April 3, 1936, by the plaintiff Buster McClish wherein he purported to convey to Grady Wallace a 2/7ths interest in the mineral royalty rights in 210 acres of land in Carter county, Okla. They also sought cancellation of subsequent mineral deeds executed to other defendants involving the above mineral interests and deraigned through the Wallace deed.

The plaintiffs alleged that on the 10th day of September, 1935, Buster McClish was owner of an undivided one-half interest in the land herein involved, that on said date he entered into a written escrow agreement with Grady Wallace by the terms of which a mineral deed executed contemporaneously with said escrow agreement would be placed in escrow in the National Bank of Tulsa, Okla., until such time as the defendant Grady Wallace should pay to the said bank for the use of Buster McClish the sum of $6,000. That this escrow agreement was filed in the office of the county clerk of Carter county on the 11th day of December, 1935; that on the 3rd day of April, 1936, the said McClish was induced to sign a written instrument withdrawing the original mineral grant referred to from escrow with the National Bank of Tulsa, Okla., and McClish was induced to execute a second mineral deed or grant to Grady Wallace covering an undivided 2/7ths interest in the oil, gas, and other minerals which might be produced from the property in controversy. McClish alleged that there was a verbal understanding and agreement between Buster McClish, Grady Wallace, and Tom Wallace that said mineral deed should be held by Tom Wallace until Grady Wallace should pay Buster McClish the sum of $6,000 in cash. McClish further alleged that said Tom Wallace delivered said purported mineral grant to the said Grady Wallace, who placed same of record in the office of the county clerk of Carter county, Okla., on the 4th day of April, 1936. McClish further alleged that the delivery of said deed was wrongful and illegal and without his knowledge or consent and that the recording of said deed was not discovered until five or six days prior to the filing of this action in the district court of Carter county, Okla.

The plaintiffs contended that in obtaining possession of said purported deed and placing the same of record the defendant Grady Wallace and his grantees did not acquire title, interest, equity, or estate in the said property or any part

thereof. The defendants denied the allegations of the petition; denied the existence of any escrow agreement between the plaintiffs and Grady Wallace, denied the existence of fraud in the transaction, and asserted that they were innocent purchasers for value of the mineral rights acquired under the conveyances from the defendant Grady Wallace. Plaintiffs in error further contend that the plaintiffs ratified the conveyances and by their acts are estopped from asserting invalidity of the conveyances, and also are guilty of laches.

The cause was tried to the court, which made findings of fact and conclusions of law.

The conveyances are as follows: On the 5th day of May, 1936, Grady Wallace purported to convey to the Home-Stake Oil & Gas Company, a corporation, and the Home-Stake Royalty Corporation an undivided 2/21st interest in and to the mineral rights and substance in the property herein involved.

On May 5, 1936, Grady Wallace purported to convey to B. Fleeger an undivided 2/21st interest in the mineral rights and substance in the property herein involved.

On February 3, 1937, Grady Wallace purported to convey to Selden Henry a 2/21st interest in and to the mineral rights and substance in the property herein involved.

On February 5, 1937, the defendant Selden Henry purported to convey to the Stanolind Oil & Gas Company an undivided 2/21st interest in and to the mineral rights and substance in the property.

From a judgment in favor of the plaintiffs canceling the above conveyances and quieting title in the plaintiffs, the defendants Home-Stake Royalty Corporation, Home-Stake Oil & Gas Company, B. Fleeger, and Stanolind Oil & Gas Company appeal on the grounds: First, that the evidence does not establish an escrow between plaintiff Buster McClish and the defendant Grady Wallace; second, insufficiency of evidence

to sustain the judgment; third, that Tom Wallace was an improper person to act as escrow agent so as to constitute a valid escrow; fourth, that the cancellation of the conveyances required a return of the consideration paid; and fifth, that the plaintiffs are estopped by laches.

As heretofore noted, the court made findings of fact and conclusions of law. That part relating to the escrow agreement was as follows:

"The substance of the escrow agreement of April 3, 1936, was that Grady Wallace promised and agreed to pay the sum of $6,000 for the mineral interest under this particular sixty acres of land in controversy, and that the deed was to be left in the possession of Tom Wallace, an attorney, as an escrow holder until the money was paid, and upon payment of the $6,000 the deed was to be delivered to Grady Wallace. It was understood and agreed between the parties at the time that the money would be forthcoming within a few days.

"The court finds as a matter of fact that immediately after the execution of said deed on April 3, 1936, that it was delivered to Grady Wallace without the knowledge and consent of Buster McClish, and that the same was placed on record in the office of the County Clerk of Carter County, Oklahoma, the following day, which was April 4, 1936. No part of the consideration was ever paid Buster McClish.

"The court finds that Buster McClish went to the office of Tom Wallace on various occasions during the next three weeks following the execution of the deed and the escrow agreement, inquiring as to whether or not the money had been paid. Upon the third and last trip to the office of Tom Wallace the plaintiff, Buster McClish, was advised that the deal was all off and that the deed had been lost, and that Tom Wallace informed Buster McClish he was unable to find it. * * *

"The court finds as a matter of fact that there was a parol escrow agreement entered into by and between Buster McClish and Grady Wallace on the 3rd day of April, 1936; that said agree-

ment was broken and that a delivery was made in violation of the escrow agreement without the knowledge or consent and against the will of Buster McClish and prior to the payment of any money in consideration therefor."

Adverting to the question of escrow. Generally the question is one of fact to be determined from the evidence in each particular case. 10 R.C.L. 623. The term is defined in Ballentine's Law Dictionary, page 445, as follows:

"A written instrument which by its terms imports a legal obligation, and which is deposited by the grantor, promisor, or obligor, or his agent, with a stranger or third party, to be kept by the depositary until the performance of a condition or the happening of a certain event, and then to be delivered over to the grantee, promisee, or obligee."

See, also, 10 R.C.L. 621.

In Eason v. Walter et ux., 118 Okla. 37, 246 P. 865, we approved the rule announced by the Supreme Court of Minnesota in Thoraldsen v. Hatch, 91 N.W. 467, wherein it was held:

"Where a deed is deposited with a person other than the grantee, upon an agreement to deliver it upon the performance of certain conditions, *it is an escrow,* and it is not necessary that the terms authorizing its delivery be expressed in writing, but may be declared orally at the time of the deposit."

In the Eason Case, supra, as here, it was contended that the transaction was within the statute of frauds, citing section 9455, O. S. 1931, 15 Okla. St. Ann., § 136, which provides that an agreement for the sale of real estate or of an interest therein is invalid unless the same, or some note or memorandum thereof, be in writing and subscribed by the party to be charged. In that case, in discussing the present question, the court, in the body of the opinion, said:

"We do not think there is any merit in this contention, because the lease itself embodied all the terms of a valid contract, and was sufficient to take a verbal agreement, or one partly in writing and partly verbal, as to delivery of the contract, out of the statute of frauds." (Citing cases.)

In the present case the court found that there was a parol escrow agreement entered into by and between Buster McClish and Grady Wallace on the 3rd day of April, 1936, and the evidence is sufficient to support this finding. The finding is that McClish and Grady Wallace agreed upon Tom Wallace as a depositary or escrowee. As such he was an agent of both parties under the escrow agreement. The contract for deed was not revocable at the mere will of either of the parties thereto. Creeden, Adm'x, v. North, 160 Okla. 90, 15 P. 2d 991. The court found that the deed was to be left in possession of Tom Wallace, escrow holder, until the payment of the sum of $6,000 to Buster McClish, and that the deed was then to be delivered to Grady Wallace; that the deed was delivered to Grady Wallace without the knowledge or consent of Buster McClish. Beyond question this was a violation of the escrow agreement.

On the question of escrow, we have examined the authorities relied upon by the defendants. Almost without exception the authorities are from other states and generally discuss situations not presented by the facts here. In the main the holdings favorable to the defendants are based upon facts showing no binding agreement between the grantor and grantee and acceptance by a third party of the position of depositary; or, where the depositary was the agent of only one of the parties to the agreement. Security-First Nat. Bank of Los Angeles v. Clark et al. (Cal. App.) 48 P. 2d 167; Thomas v. Birch et al. (Cal.) 173 P. 1102; Holland v. McCarthy et al. (Cal.) 160 P. 1069.

As an example, in the latter case, under the facts there considered it was held:

"A writing addressed to brokers, agreeing to sell a lot for $3,000, was not a valid contract to sell, merely authorizing the brokers at most to find a suitable purchaser, without binding the owner to make a contract of sale to any person.

"By Civ. Code, § 1624, subd. 5, an agent's authority to make a contract to sell his principal's land is not valid, unless in writing and signed by the principal.

"The deposit of a deed with a third person to be delivered to the grantees upon payment of the price for the land fixed by the grantor is not a delivery in escrow, where there was no prior or contemporaneous contract of sale of the land of which the delivery of the deed was to be the consummation."

The authorities are not in point.

The court in the instant case found:

"The court finds that the various oil companies, who are the grantees of Grady Wallace, were innocent purchasers of the respective interests in the minerals and mineral rights under this land. That they in no way participated or had knowledge of the fraud perpetrated upon the plaintiff, Buster McClish"

—and concluded:

"The court concludes that the delivery of the deed in question to Grady Wallace in violation of the escrow agreement conveyed to him no title and that the purported deed placed on record should be canceled as a void conveyance and held for naught."

The defendants argue that, inasmuch as the court found that they were innocent purchasers of the respective interests in the minerals and mineral rights to the land without knowledge of fraud perpetrated upon the plaintiff Buster McClish, the conclusion of the trial court is erroneous.

The trial court found that an escrow existed and found that the escrow contract had been violated by the delivery of the deed without performing the terms of the escrow agreement, and under the record here we may not consistently or logically find that the finding of the court is erroneous.

The general rule as to whether title passes, where a deed deposited in escrow is delivered without complying with conditions, is found in 1 Devlin on Real Estate (3d Ed.) p. 412, par. 268c:

"If a grantee surreptitiously obtains the possession of a deed deposited in escrow without complying with the conditions, the fact that the grantor assumed possession of other property which the grantee transferred to him by way of exchange, will not operate as a ratification because the grantor had the right to take possession immediately, but the grantee was not authorized to secure the deed running to him until the condition attached to the delivery in escrow had been complied with. But if a deed placed in escrow is taken from the custody of the depositary for the inspection of the grantee's attorney, and the grantee fails to comply with the conditions of the escrow, his conveyance to an innocent purchaser will not estop the grantor from showing the want of proper delivery. Or, if the depositary, himself wrongfully, delivers the deed to the grantee who places it on record, the grantor is not estopped to show the invalidity of the deed as against an innocent mortgagee. If the depositary erases the name of a grantee in a deed and inserts that of another, the grantor may set up the invalidity of the deed. But if a husband named as grantee in a deed executed by his wife forcibly obtains possession of it, places it on record and remains for a number of years in the open possession of the property described, his conveyance subsequently to an innocent vendee will pass a good title as against his wife. If a grantor without delivering the deed to the grantee has it placed on record, and then delivers it to a third person to hold in escrow, and if the grantee without complying with the conditions conveys to a purchaser acting in good faith, the latter will acquire title as the grantor will be estopped by his negligence. Although a grantee may secure a deed not delivered to him and cause it to be recorded the grantor may ratify the transaction by inducing the grantee to assert title in himself and to incur obligations on the belief that his title is valid. A grantor may be estopped by the act of his agent in delivering a deed in violation of the trust placed in him on the principle that he should bear the loss and not an innocent person. While a grantor whose deed has not been delivered or has been obtained from him by deceit or fraud, may assert its invalidity on the ground that delivery was essential to its full effect, and that he

never gave his assent to the act necessary to make it effective, still like any other transaction he may give his assent afterward. If he expressly gives it, of course, no question can arise. But he may give it impliedly by his conduct. His assent to the nondelivery may be presumed under certain circumstances, and when such conduct is sufficient to show a ratification the invalidity arising from nondelivery is fully cured."

Quoting from the same work, at page 571:

"Until the condition has been performed and the deed delivered over, the title does not pass, but remains in the grantor. If the condition is not performed, the grantee, we have seen, is not entitled to the deed. If the depositary deliver the deed without authority to do so from the grantor, or if the grantee obtain possession of it fraudulently, without performing the condition, the deed is void. The deed thus obtained conveys no title either to the grantee or purchasers under him. Although, as was previously shown, the possession of a deed by the grantee is prima facie evidence of its delivery, yet where it appears that the final transfer was dependent upon the compliance with certain terms and conditions, the party who claims under the deed must prove such compliance. His right to the deed and to the property conveyed is subject to the performance of a condition precedent, and this performance it is not necessary to prove. * * *"

We also quote from the same work (page 577):

"To maintain the plea of an innocent purchaser, a person must have acquired the legal title, which he seeks to protect against some latent equity or charge on the land. Hence, this plea cannot avail a person who had bought on the faith of the possession of the escrow by the person named therein, where such possession has been obtained wrongfully. The conveyance made by the grantee in the escrow cannot affect the legal title, for that remains in the grantor or his heirs."

This is the majority rule. Before proceeding to a discussion of other authorities, we desire to point out that the property in question is vacant and un-improved. The defendants did not drill for oil or attempt to improve the property, and there is no evidence in the record that the plaintiff took any steps that might mislead the defendants, or that he ratified the delivery of the deed in any manner.

Oklahoma has passed on this matter under a state of facts very similar to those under consideration. Clevenger v. Moore, 126 Okla. 246, 259 P. 219, 54 A. L. R. 1237. In this case Mary Clevenger owned property in Bartlesville. There was a trade proposed between Mrs. Clevenger and one Simmons. The deed was placed in the hands of Peay, not to be delivered to Simmons until Mrs. Clevenger had had an opportunity to examine certain property in Tulsa belonging to Simmons. The deed was delivered to Peay and some time thereafter Mrs. Clevenger examined the Tulsa property, immediately announcing that she would under no circumstances accept the Tulsa property in exchange for her Bartlesville property. She made repeated demands for the return of the deed, but it was never returned, having been delivered, without her knowledge or consent, to Simmons. The deed was dated September 15, 1922, and was delivered to Peay about that time. Peay, in turn, delivered the deed to Simmons, and it was filed for record on the 25th day of September, 1922. On January 4, 1923, Simmons and his wife conveyed to the defendant Moore. At the time of the delivery of the deed to Moore, Simmons had obtained possession of the property, without the knowledge or consent of Mrs. Clevenger, who did not know that her deed had been recorded until January of 1923. Moore claimed to be an innocent purchaser for value; that he had had the abstract examined and made efforts to ascertain the condition of the title and outstanding rights; that he had paid value therefor in good faith without the knowledge of any claim by the plaintiff or any other person to any interest in the property. The court reviewed various authorities and held:

"No title will pass by a deed which

is not delivered by the grantor or some one duly authorized by him."

The court, in following and commenting on the case of Taylor v. Harkins, 74 Okla. 206, 178 P. 117, said (259 P. 221):

"It was held that a deed does not operate to convey title until delivered, and that, where the possession of a deed placed in escrow is obtained without the performance of the condition upon which delivery thereof was to be made, no title passes therefor."

In Clevenger v. Moore, supra, it was also urged that Moore obtained title because of being an innocent purchaser for value. In that case the court distinguished the situation in cases where the signature to the deed or consent to its delivery is obtained by fraud from cases where the instrument is obtained from the escrowee in violation of the terms thereof and without knowledge or consent of the grantor. In the latter cases, the court said, the taking of the deed in violation of the terms thereof is equivalent to taking the instrument from the possession of the grantor by theft. Where the deed is obtained by fraud, the grantor consents to the delivery and has knowledge of such delivery and the innocent purchaser will be protected, but where the instrument is taken in violation of the terms of the escrow and without the knowledge or consent of the grantor, the innocent purchaser is not protected. In the Clevenger Case, we said:

"We have read all the cases cited, and one of the earliest cases on the subject seems to be the case of Smith v. South Royalton Bank, 32 Vt. 341, 76 Am. Dec. 179, where it is held that a deed delivered in escrow to be delivered to the grantee, after the performance of some other act, will not be valid for any purpose until the condition upon which it is to be delivered to the grantee has been performed, and the fact that the deed has since come into the hands of an innocent purchaser for value will not change the rule in that case. However, it does not appear that the grantor had surrendered possession of the property. In that case, the court, however, after discussing the principle of the rule as applied to commercial paper, says:

" 'But let the principle be as it may, in regard to commercial papers, no question can be made as to a void deed. The case of Van Amringe v. Morton, 4 Whart. (Pa.) 382, 34 Am. Dec. 517, is ruled expressly on the distinction between a void and a voidable deed, and it was there held that a bona fide purchaser for a valuable consideration, from the person holding a void deed, stands in no better situation than such fraudulent holder. The distinction is fully recognized in Price v. Junkin, 4 Watts (Pa.) 85, 28 Am. Dec. 685, and the case decided upon that distinction. So in Arrison v. Harmstead, 2 Pa. St. 191, 195, it was held that a deed having been rendered void by an alteration, a purchaser without notice and for valuable consideration was in no better situation than the original parties. The case in 4 Wharton, as in the case at bar, was one where there had been no valid delivery of the deed. So in the case of Pawling v. United States, 4 Cranch, 219 (2 L. Ed. 601) there had been no delivery of the deed. It hardly need be remarked that if a deed wants delivery, it is void ab initio.

" 'Where a bona fide purchaser for value holds under a vendee who holds by a voidable deed though he and the creditors of the vendor have equal equities, yet the purchaser has also the legal title, and shall be preferred. In the case at bar, though the billholders to the bank represented by the treasurer and the orators, have equal equities, yet as the bond and deed are void, the legal title remains in the orators, and they should be preferred, under the common rule, that where the equities are equal, the one having the legal title prevails.'

"Another early case on the subject is the case of Everts v. Agnes, 4 Wis. 343, 65 Am. Dec. 314, which case was again before the court on a second appeal in Everts v. Agnes, 6 Wis. 453. That case was one where the facts are almost identical with those disclosed in the record in the case before us. On the first appeal (4 Wis. 343) the court did not decide the questions fully as to the rights of the person claiming to be an innocent purchaser, and did not there hold that the facts brought the purchaser

within the class of innocent holder. But upon the second appeal, the court said:

" 'The only material difference between the case as now presented, and its character on the former occasion, is, that now the defendant, Swift, appears in the attitude of a bona fide purchaser, whereas before he did not; and the only question necessary to be now considered, is whether, under the circumstances, he is entitled to protection as such bona fide purchaser; or, in other words, whether he derived title by virtue of his conveyance from Agnes, he having paid to the latter a valuable consideration without notice of the manner in which he obtained the deed of Everts and wife.

" 'It certainly cannot be deemed necessary to repeat, at this time, the observations made upon this branch of the case when it was before us on the former appeal. Our views remain unchanged; except that we are more thoroughly satisfied that the intimations and reasoning then made were correct, and we are prepared now, after another careful review of all the facts and circumstances of the case, to affirm, confidently, what we then might have uttered doubtingly.'

"In that case Everts, the plaintiff, was the maker of the deed. Agnes, one of the defendants, was the one to whom the deed had been wrongfully delivered from escrow, and Swift, the other defendant, was the one to whom Agnes had conveyed the property and made his defense upon the ground that he was an innocent purchaser for value without notice, and set up in his answer, as did Moore in the instant case, that at the time he made the purchase he caused the record to be examined, obtained full abstract of Agnes' title, and believed he (Agnes) had a good title, and gave him, Swift, one, except as to the balance due on a mortgage, subject to which Swift made the purchase. Also, that before he made the purchase he visited the premises and found Agnes and Bender in possession, that Agnes had been in undisputed possession there the preceding summer, and assured Swift his title was good, denies all notice, at the time of the purchase and payment of consideration money, as to the manner in which Agnes got the deed from Zettler (the escrow holder), and all notice of the conditions under which the deed was left by Everts with Zettler. He further alleges in his answer, that Everts, before any of these transactions, resided in the neighborhood of the premises, and saw Agnes in possession without objection, that the possession was given Agnes at the date of the contract between Everts and Agnes, and that Agnes held possession until he sold the premises to Swift. It will thus be seen that, in that case, the facts appeared more strongly against the plaintiff than in the instant case, for the reason that the evidence in this case, as the record now stands, is that the plaintiff did not know that Simmons ever was in possession, did not know how he obtained possession, if he was in possession, and that such possession was without her knowledge or consent. The court in the case of Everts v. Agnes, supra, held:

" 'We have not the slightest doubt that the deed of Everts to Agnes was delivered to Zettler as an escrow, to be delivered only upon the performance of the conditions prescribed. That Agnes fraudulently obtained possession of the deed, and fraudulently procured it to be recorded. That no title passed to Agnes, and hence he could convey none to Swift. The latter has his remedy upon his covenant against Agnes if any there be. This is the only point necessary to be considered at this time, and we adhere to the language and the conclusion adopted when this case was under consideration before, viz.: that the fraudulent procurement of a deed, deposited as an escrow, from the depositary, by the grantee named in the deed, would not operate to pass the title; and that a bona fide purchaser from such grantee so fraudulently procuring the deed, could derive no title from him, and would not be protected.'

"The case of Everts v. Agnes, supra, has been cited by a great number of the courts in other states as the leading case on this question, and was followed in the case of Dixon v. Bristol Savings Bank, 102 Ga. 461, 31 S. E. 96, 66 Am. St. Rep. 193, where the court on the question of possession said:

" 'The question of possession is not material where there has been an unauthorized delivery of an escrow, or where it has been obtained fraudulently, for the reason that the parties claiming

under the grantee named in the escrow cannot be protected, unless it is shown that the grantor ratified its delivery or that the depositary was the grantee's agent to procure delivery.'

"The rule laid down in the Wisconsin case (Everts v. Agnes, supra) seems to have been followed in the following cases: Chipman v. Tucker, 38 Wis. 43, 20 Am. Rep. 1, Tyler v. Cate, 29 Ore. 515, 45 P. 800, and Weghorst v. Clark, 66 Colo. 535, 180 P. 742, where it is said:

" 'The only way, if any, in which a grantee of a grantee of recorded undelivered deed can claim anything against the grantor in such deed is by estoppel in pais through the grantor's neglect to take immediate measures to recover his land, thus leaving an apparently good title shown by the record.' Harkreader v. Clayton, 56 Miss. 383, 31 Am. Rep. 369; Spotts v. Whitaker (Tex. Civ. App.) 157 S. W. 422; Houston v. Adams, 85 Fla. 291, 95 So. 859; Jackson v. Lynn, 94 Iowa, 151, 62 N. W. 704, 58 Am. St. Rep. 386.

"We have given due consideration to the cases cited by defendant wherein third persons claiming as innocent purchasers have been protected under circumstances somewhat similar to those in the instant case, but we think the great weight of authority, as well as better reasoning, is found in those cases holding the other way."

We think the facts in the Clevenger Case fit the facts in the case under consideration. In the Clevenger Case, Mrs. Clevenger delivered her deed to the escrow agent on the 15th of September, 1922. The court found the deed was wrongfully delivered by the escrow agent and placed of record September 25, 1922. The grantee took possession of the property in December of 1922, and sold it to an innocent purchaser for value in January of 1923. During all of this time the deed from Mrs. Clevenger was of record. It is true that as far as the Stanolind Company is concerned a longer time elapsed from the placing of the McClish deed of record until the purchase from Grady Wallace, grantee, but in the absence of other circumstances we do not believe this difference in lapse of time is material.

This question was again considered by us in the case of Equitable Royalty Co. v. Perry, 171 Okla. 51, 41 P. 2d 692. In that case the owner of the property, Mrs. Perry, on the 16th day of April, 1929, placed a deed in escrow, the deed not to be taken down without the consent of the grantor. On May 3, 1929, the agent of the grantee named in the deed took the papers out of escrow and filed same of record. On April 30, 1929, Knott, the party named as grantee in the deed, conveyed to Deaton. Deaton conveyed the same to the Equitable Royalty Company, on the 7th day of May, 1929. The Equitable Royalty Company claimed to be an innocent purchaser of the interest, and, in that connection, we said:

"We do not think so. When Knott, through his attorney, wrongfully broke the escrow agreement and took down the lease and royalty, and on May 3d, without consent of the plaintiff, and without her knowledge, such act was in violation of the escrow agreement and no title to the property described in either of such instruments passed to Knott. As no title passed to Knott in the royalty, he had no title to convey to Deaton. Therefore, Deaton had no title to convey to the intervener, the royalty company. Our court has held this over and over again and we take it to be settled law in this jurisdiction. Hunter Realty Co. v. Spencer, 21 Okla. 155, 95 P. 757, 17 L.R.A. (N. S.) 622; Taylor v. Harkins, 74 Okla. 206, 178 P. 117; Hallam v. Bailey, 66 Okla. 46, 166 P. 874; Heath v. Dry Goods Co., 74 Okla. 186, 177 P. 606; Board of Commissioners v. Little, 80 Okla. 45, 193 P. 986; Eason v. Walter, 118 Okla. 37, 246 P. 865."

It might be noted that in that case Mrs. Perry, while being the owner of the land, was not residing thereon, but lived in Enid at the time of the transaction.

The case of Simmons v. Howard, 136 Okla. 118, 276 P. 718, was an action to recover possession of property. It was alleged that on August 23, 1912, the plaintiff signed a deed and placed the same in escrow in the German State Bank in Elk City, Okla.; that the deed was to be held in said bank until

a trade with Johnson was closed; that the defendant Johnson wrongfully secured possession of the deed from the escrow bank and placed same of record; that plaintiff received no consideration for the deed and that thereafter defendant Johnson conveyed to William Howard. The defendant Belle Howard claimed that she acquired title by deed from her former husband, William Howard. Various proceedings were had between the parties, including applications to set aside judgments and reopen judgments. However, the gist of the action was whether or not title passed, and the court said:

"If this were an action to rescind on the ground of fraud, these authorities would be applicable. We think, however, counsel mistake the nature of the action. This is not an action to rescind a contract voluntarily entered into, the execution of which was induced by fraud, but is an action to recover possession of real estate. Under the allegations set forth in plaintiff's petition, no title to the premises ever passed to Johnson. He could, therefore, convey nothing to William Howard, and the said Howard could convey nothing to his codefendant, Belle Howard. Plaintiff, under the allegations of her petition, was never divested of the title to the premises. Title at all times remained in her. Possession of the premises was wrongfully taken by defendants. Plaintiff, in her action, simply seeks to recover the possession thereof, and, as an incident thereto, seeks to quiet her title. The 15-year statute of limitations is therefore the applicable statute.

"In this position we are sustained by the following authorities: Turner v. Nicholson, 115 Okla. 56, 241 P. 750; Clevenger v. Moore, 126 Okla. 246, 259 P. 219, 54 A.L.R. 1237."

It will be noted that we have heretofore made a distinction between cases where delivery was induced by fraud and cases where delivery was made without the knowledge and consent of the grantor. Many states have gone farther than the rule enunciated in Moore v. Clevenger, supra, particularly Florida, and in this connection we note the case of W. D. Houston v. Charles Forman et al. (Fla.) 109 So. 297, 48 A.L.R. 401. In the syllabus the court held:

"One obtaining a deed from an escrow holder by fraudulent means acquires no title thereby, as there is no delivery.

"Where a deed is placed in escrow to be delivered only upon the happening of a certain contingency, and where such deed is obtained from the escrow holder by fraud, the grantor is not thereby deprived of his title to his property."

This case is also authority that the recording of the deed does not impart constructive notice and that such recording does not constitute an estoppel. We again quote from Houston v. Forman, supra:

"This court there held that, even assuming that Forman was not advised of the fraudulent acts of the Adamses, Richbourg, and Barnett, the situation was presented where one of two innocent parties will lose. And the court sustained the appellant's contention that, the deed having been fraudulently acquired from the escrow holder, there was no delivery, and that without delivery it was without effect, and said that under such circumstances the grantor was no more liable to be deprived of his property by such wrongful act than he would be if he had deposited the deed in an iron safe which had been broken into and stolen.

"We do not think that the possession shown by the evidence, or the failure of George Forman & Co. or Charles Forman to have actual notice of the infirmity of the title, in any way estops the appellant from showing the true state of the title. Neither do we think that constructive notice of the filing of two deeds, and the mortgage deed, if he had such constructive notice of such instruments, which, under the true state of the title, were invalid to convey the title to the land or to incumber it, would estop him.

"The possession of Barnett and Richbourg was notice to the world, not of the apparent, but of the real, title under which they held, which was that of an assignee of the rights of the Adamses. These rights were not to ripen into a fee-simple title to the land until the purchase price therefor had been paid."

While we are of the opinion that Oklahoma is definitely committed to the majority rule, as set out in Clevenger v. Moore, supra, we feel it would not be amiss to quote from decisions of other states.

In Merchants & Farmers State Bank of Grove City, Respondent, v. Melford Olson (Minn.) 250 N. W. 366, 89 A.L.R. 1289, the court said:

"Where an instrument placed in escrow is delivered by the escrow holder either in violation of or without compliance with the terms or conditions of the escrow agreement, no title passes by virtue of such delivery, because in legal contemplation it is not effectual delivery and the grantee thereunder obtains no more right than he would have in the possession of a forged or stolen instrument. Henry v. Hutchins, 146 Minn. 381, 178 N. W. 807; Bergstrom v. Pickett, 148 Minn. 224, 181 N. W. 343; Knapp v. Nelson, 41 Colo. 447, 92 P. 912; Evans v. McKinney, 308 Ill. 100, 139 N. E. 99, 106. The obtaining of the delivery of the deed so held in escrow by any means short of performance of the condition of the escrow is against the assent of the grantor, and, since this assent is essential to the delivery and the delivery essential to the validity of the deed, no title passes. Everts v. Agnes, 4 Wis. 343, 65 Am. Dec. 314, 318; Daggett v. Daggett, 143 Mass. 516, 10 N. E. 311; Calhoun County v. American Emigrant Co., 93 U. S. 124, 23 L. Ed. 826; Los Angeles City High School Dist. v. Quinn, 195 Cal. 377, 234 P. 313; Weghorst v. Clark, 66 Colo. 535, 180 P. 742; Coe v. Turner, 5 Conn. 86; Evans v. McKinney, 308 Ill. 100, 139 N. E. 99. If no title passes to the grantee named in the deed, then, of course, he can pass nothing on to an innocent subvendee. Balfour v. Hopkins, 93 F. 564, 35 C.C.A. 445; Fearing v. Clark, 16 Gray (Mass.) 74, 76, 77 Am. Dec. 394; Provident Life & Trust Co. v. Mercer County, 170 U. S. 593, 604, 18 S. Ct. 788, 42 L. Ed. 1156; Devlin on Deeds (3d Ed.) § 322. Insofar as Murray v. Foskett, 114 Minn. 44, 130 N. W. 14, indicates a different rule, it is hereby overruled."

In Greenzweight v. Title Guarantee & Trust Co. et al. (Cal. App.) 28 P. 2d 381, the court, in the body of the opinion, said:

"A deed delivered by an escrow agent in violation of the conditions under which it was deposited in escrow vests no title in the grantee, nor in an innocent third person to whom the property is subsequently transferred. Such delivery is void, and has no force or effect whatsoever. Los Angeles City High School District v. Quinn, supra; Gould v. Wise, 97 Cal. 532, 32 P. 576, 33 P. 323; Promis v. Duke, 208 Cal. 420, 281 P. 613; Brown v. Wilson, 89 Cal. App. 764, 265 P. 351; Bingham v. Taylor (C.C.A.) 12 F. 2d 15."

Iowa passed on this matter in Lindberg v. Younggren et al., 228 N. W. 574, wherein the court said:

"Of course, if the deed was in escrow, as contended, and the depositary wrongfully delivered it to the grantee or another 'without the performance of the conditions under which it was to be delivered,' no title passes, and, as said in Tutt v. Smith, 201 Iowa, 107, 204 N. W. 294, 296, 48 A.L.R. 394: 'A subsequent purchaser from the grantee * * * acquires no title, and will not be protected.' To the same effect, see Jackson et al. v. Rowley, 88 Iowa, 184, 55 N. W. 339, and Jackson v. Lynn et al., 94 Iowa, 151, 62 N. W. 704, 58 Am. St. Rep. 386. Those authorities, of course, control where the facts make them applicable."

The facts in that case are not like those in the case under consideration, inasmuch as the decision went off on the question of ratification, but the quoted portion of the opinion indicates the correct rule of law.

From the above we conclude that where a deed placed in escrow is delivered without the knowledge or consent of the grantor, no title passes, either to the grantee or to subsequent purchasers without notice or knowledge of the escrow agreement, unless the grantor ratifies the delivery or is estopped to deny same. The court found in the instant case that there was "no ratification of delivery of the deed, and this conclusion is borne out by the record.

The defendants further contend that the consideration paid by them should be returned, relying principally upon section 9500, O. S. 1931, 15 Okla. St. Ann. § 235, and Oland v. Malson, 39 Okla. 456, 135 P. 1055. The statutory provision referred to reads:

"Rescission, when not affected by consent, can be accomplished only by the use, on the part of the party rescinding, of reasonable diligence to comply with the following rules:

"First. He must rescind promptly, upon discovering the facts which entitle him to rescind, if he is free from duress, menace, undue influence, or disability and is aware of his right to rescind; and,

"Second. He must restore to the other party everything of value which he has received from him under the contract; or must offer to restore the same, upon condition that such party shall do likewise, unless the latter is unable, or positively refuses to do so."

In the present case the court held the escrow agreement was violated by delivery of the deed without the knowledge or consent of the grantor. He received no consideration for the delivery. Therefore, the statutory provision and the decision of the court in Oland v. Malson, supra, are not applicable unless it may be said that the plaintiffs, by their conduct, or acts, have ratified the conveyances. Under the pleadings the question of ratification was an issue presented in the trial of the cause and was determined by the court in its judgment.

We now come to the question of whether or not the plaintiffs are estopped from maintaining the action. In Blackstock Oil & Gas Co. v. Caston, 184 Okla. 489, 87 P. 2d 1087, in the body of the opinion, we said:

"It is the general rule in this jurisdiction that the question of whether a claim is barred by laches must be determined by the facts and circumstances in each case and according to right and justice; that laches in legal significance is not mere delay but delay that works disadvantage to another. Harn v. Smith,

85 Okla. 137, 204 P. 642; Cassidy v. Gould, 86 Okla. 217, 208 P. 780; Parks v. Classen Co., 156 Okla. 43, 9 P. 2d 432."

In the above cause one of the partners purchased the interest of the other party on the 6th of January, 1936. In the meantime the property was developed at a cost to the purchasing party of $84,000. The purchasing partner completed a well on May 2, 1936, and another well about June 3, 1936, and the partner who had sold his interest in the lease did not bring suit until August 6, 1936. The court held that this "standing by" while the lease was being developed did not amount to estoppel by laches. In the case under consideration, the deed from Buster McClish to Grady Wallace was recorded April 5, 1936. The Home-Stake Oil & Gas Company and the Home-Stake Royalty Company received their deeds from Grady Wallace on the 5th day of May, 1936; B. Fleeger received his deed May 5, 1936; Selden Henry received his deed February 3, 1937, and the Stanolind Oil & Gas Company received its deed on February 5, 1937.

It is undisputed that the mineral rights acquired under these conveyances have never been developed for oil and gas purposes, and there is no evidence that the plaintiff in any manner acted so as to deceive the defendants or to lull them into security, other than to allow the deed to remain on record without taking action from the 5th day of April, 1936, until the institution of this action on the 25th day of March, 1937.

The evidence shows that the action was begun within a few days after the plaintiffs ascertained that the deed had been wrongfully delivered; therefore the only question remaining is whether or not the placing of the deed on record on the 5th day of April, 1936, without the knowledge or consent of the grantor, was constructive notice to the plaintiffs that the deed had been wrongfully delivered, and whether for that reason they are estopped from maintaining this action.

In Clevenger v. Moore, supra, the deed was recorded on the 25th day of September, 1922; the grantee named in the deed took possession of the property in December of 1922. The deed to the alleged purchaser for value was recorded January 4, 1923. While the same period of time did not elapse between the recording of the deed to the alleged innocent purchaser in Clevenger v. Moore as elapsed between the illegal delivery of the deed in the case under consideration and the recording of the deed to the Stanolind Oil & Gas Company, yet the mere fact that the wrongfully delivered deed was recorded does not create an estoppel in favor of an innocent purchaser for value. In the case of Equitable Royalty Co. v. Perry, supra, the deed was placed in escrow on the 16th day of April, 1929, and the Equitable Royalty Company was not protected on the ground of innocent purchaser for value.

This question was also passed on squarely in the case of Houston v. Forman, supra, wherein the court said:

"We do not think the possession shown by the evidence, or the failure of George Forman & Co., or Charles Forman to have actual notice of the infirmity of the title, in any way estops the appellant from showing the true state of the title. Neither do we think that constructive notice of the filing of two deeds, and of the mortgage deed, if he had such constructive notice of such instrument, which, under the true state of the title, were invalid to convey the title to the land or to incumber it, would estop him.

"The possession of Barnett and Richbourg was notice to the world, not of the apparent, but of the real, title under which they held, which was that of an assignee of the rights of the Adamses. These rights were not to ripen into a fee-simple title to the land until the purchase price therefor had been paid."

Under the authority above cited, it is clear that the recording of the illegally delivered deed, without knowledge or consent of the grantor, did not create an estoppel in favor of an innocent purchaser.

McClish testified that he made three trips to the office of Tom Wallace for information concerning the payment of the consideration for the deed, that Tom Wallace told him that he had not seen Grady Wallace and that the consideration could not be paid. McClish further testified that he asked the depositary for the return of the deed and that he was advised that it was lost; that he first learned of the delivery and recordation of the deed approximately five days before the institution of this action. The mere recording of the wrongfully delivered deed did not of itself constitute an estoppel or a ratification of the delivery.

The court found that Buster McClish and Grady Wallace agreed on Tom Wallace as a depositary of the conveyance. As such, he was agent of both parties, and the contract could not be revoked at the mere will of either of the parties to same. Creeden, Adm'x, v. North, 160 Okla. 90, 15 P. 2d 991.

This is quite a different situation from where the deed is deposited with the attorney for the grantor as attorney for the grantor. If deposited as attorney for the grantor, the deposit would be equivalent to possession by the grantor and the agreement could be revoked, but where the depositary acts as agent for both parties, such contract of deposit is not revocable at the mere will of either of the parties, and the deed must be retained by the depositary until the terms of the escrow have been complied with.

The court found that Tom Wallace was agreed upon to hold the deed until the sum of $6,000 was paid to Buster McClish, and when this was done the deed was to be delivered to Grady Wallace; that immediately after the execution of said deed it was delivered to Grady Wallace without the knowledge or consent of Buster McClish and the same was placed for record without the knowledge or consent of Buster McClish, and no part of the consideration was ever paid to Buster McClish, and the record does not disclose that any

part of the money was paid to the escrowee.

The court found that there was a confidential relationship existing between the plaintiff Buster McClish and Tom Wallace, and that when he was advised the deed was lost he made no further inquiry, and had the first actual notice of the delivery and recordation of the deed only a few days prior to the filing of the suit; that plaintiff had never seen the land in controversy and had not been in Carter county since the filing of the deed of record until the institution of the suit.

The court also found that the oil companies in no way participated or had knowledge of the fraud perpetrated upon Buster McClish.

In a situation where questions of fact are in dispute, this court will not disturb the judgment of the court upon the question of proof where the record as a whole sustains the judgment. In equity cases it is not the province of this court to reverse the judgment of the trial court unless we may say from an examination of the entire record that the judgment is clearly against the weight of the evidence. Arkansas Valley Petroleum Corp. v. Twyford, 179 Okla. 128, 65 P. 2d 181; Gillespie v. Dougherty, 179 Okla. 330, 65 P. 2d 486; McAfee v. Harden, 180 Okla. 546, 71 P. 2d 463; Ransom v. Fields, 169 Okla. 68, 35 P. 2d 935.

Finding no error in the trial of the cause, the judgment is affirmed.

BAYLESS, C. J., WELCH, V. C. J., and RILEY and HURST, JJ., concur. CORN and GIBSON, JJ., dissent. OSBORN and DAVISON, JJ., absent.